## JOHN P. WESTON *vs.* FREDERICK BARNICOAT.

Norfolk. January 12, 15, 1900. — March 2, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Libel — Circulation of Black List by Trade Association — Contract — Evidence — Privileged Communication — Instructions — Action.*

If before A. and B. make a contract for a granite monument, A. sends B. a sample of stock, and in reply B. writes that'he has decided to give A. the order for the monument, " the same to be made of first quality white Westerly granite," with further requirements, the order is an order by description, and not by sample, and the sample is not a part of the terms of the contract.

In an action for libel against a member of an association who reported the plaintiff's name, upon his refusal to pay a claim of the defendant, to the association, with the result that the plaintiff's name was placed upon a black list, letters written after the action was begun, declining to deal with the plaintiff on the ground that his name was on such list, are admissible in evidence.

That the plaintiff was indebted to the defendant may not be an obstacle to the maintenance of an action for libel in causing the circulation of a black list containing the plaintiff's name, which was reported to an association of which the defendant was a member for that purpose, upon the plaintiff's declining to pay the defendant's claim.

In an action for libel against a member of an association who, upon the plaintiff's declining to pay his claim, reported the plaintiff's name to the association, with the result that his name was placed on a black list, which act caused the discontinuance of business dealings with him by members of the association, all in accordance with its by-laws, it cannot be ruled that the circulation of the black list was privileged.

No exception lies to the refusal to give an instruction in the language requested, if it is sufficiently covered by the instructions given.

If a member of an association reports the name of a debtor who has declined to pay his claim, with the intended result that the debtor's name is placed on a black list, which act causes the discontinuance of business dealings with him by members of the association, in an action by such person against his creditor for libel, the judge rightly refuses to rule that the defendant is not responsible for what the association or its officers did under its by-laws in connection with publishing the plaintiff's name.

TORT, for libel. At the trial in the Superior Court, before *Dunbar*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*G. W. Wiggin & J. E. Cotter*, for the defendant.

*C. W. Bartlett & E. R. Anderson*, for the plaintiff.

HOLMES, C. J. This is an action of tort brought against a member of an association of the type considered in *Hartnett* v.

*Plumbers' Supply Association*, 169 Mass. 229, for using the machinery provided by the association's by-laws. The defendant made a claim against the plaintiff for the price of a granite monument, which the plaintiff declined to pay. The defendant thereupon notified the plaintiff that if the plaintiff did not pay he should report the plaintiff's name to the association, to be placed upon its record of those who did not pay their honest debts. The plaintiff not paying, the defendant notified the local secretary, and thereupon the plaintiff received a letter from the association urging him to settle or explain, with a threat of placing his name upon the record if he did not. The consequence of placing a name upon the record or black list was a boycott by the association, as the plaintiff was notified by a copy of the following by-law: " No member of this Association shall quote prices or do any work, either directly or indirectly, for any person or persons whose name appears on the list." The plaintiff did not pay, and a little later his name was placed upon the list with the anticipated result, and with the effect of serious damage at least to the plaintiff's business. The plaintiff thereupon brought this action for causing the circulation of the report, and had a verdict. The case is here on exceptions. It was treated at the trial as an action for libel, so that some questions touched upon in *May* v. *Wood*, 172 Mass. 11, do not arise. In the opinion of a majority of the court the exceptions must be overruled.

1: The defendant set up the truth of the alleged libel, and so the question who was in default under the contract came before the jury. The defendant contended with reference to the quality of the stone used that the contract was by sample, and offered the alleged sample in evidence. It was excluded for that purpose, and, although it was admitted upon other grounds, the court instructed the jury that " the sample was not a part of the terms of the contract," and an exception was saved to the ruling. The contract was made by letters. Before the bargain was made the defendant wrote that he would send a sample of stock and did so. In reply the plaintiff wrote that he had decided to give the defendant the order for the monument, etc., " The same to be made of first quality white Westerly granite." Further on he added: " This job must be free from iron, knots, streaks, or any imperfections and cut as fine as it is possible to cut Westerly

granite, and first class in every respect." It does not matter whether the contract was made by this letter or only after some further correspondence, as this letter fixed the terms. It seems to us that the order in the words quoted was an order by description, not by sample, and that the ruling was correct. Possibly the fact that the sample had been exhibited might have some bearing on the meaning of " white Westerly granite," and of " first class," so far as it applied to the quality of the stone, but the letter made the test of performance conformity to the words of description used, not conformity to the piece of stone previously shown. In the language of *Pike* v. *Fay*, 101 Mass. 134, 137, cited by the defendant, the writing distinctly defined the article to be delivered.

2. The next exception is to the admission of letters written after the action was begun, declining to deal with the plaintiff on the ground that his name was on the black list. " There can be but one assessment of damages for the cause of action on which this suit is based, and all the damages, those accruing after as well as before the bringing of the action, must be included in it. Evidence as to damages after the date of the writ was therefore rightly admitted. *Fay* v. *Guynon*, 131 Mass. 31." *Wheeler* v. *Hanson*, 161 Mass. 370, 377. The letter embodied the act of refusal which was an example of the precise damage which the libel did and was intended to do. The act was not qualified or made inadmissible by the fact that the letter contained a compliment to the plaintiff. Generally speaking, admissible evidence is not made inadmissible by carrying with it some collateral fact disadvantageous to the other side, which of itself could not be put in proof. Thus, even in a criminal case, where previous disposition or intent is to be proved, the evidence of it is not to be rejected because it may prove another crime. *Commonwealth* v. *Bradford*, 126 Mass. 42, 45. *Commonwealth* v. *Corkin*, 136 Mass. 429, 431. *Commonwealth* v. *Robinson*, 146 Mass. 571, 578, 579. The possibility that the evidence might be manufactured goes to its weight, not to its competency. Such a possibility exists generally after a suit is begun. The plaintiff's testimony imported that the letter was written *bona fide* in the regular course of business and the defendant had the chance to cross-examine him. The letter

from the plaintiff was not called for, and no objection upon the ground of its not being produced is open.

3. At the end of the charge the court said: "In order to save any misunderstanding the plaintiff wishes me to state: — the fact that there is a debt existing here, or may be a debt here existing between the plaintiff and defendant is not to be considered by you as any obstacle to the plaintiff's recovery in this case. You are to follow the rules which I have indicated in the charge." The defendant excepted, and both sides argue the exception on the footing that the judge gave the ruling asked by the plaintiff, as the words "in order to save misunderstanding" suggested that he was about to do so. But for the form of the bill of exceptions and the agreement of counsel we should have thought from what followed that the judge simply read a request without adopting it, and then for his own view of the law referred the jury to what he had said before. He previously had instructed the jury that if the statement in the publication was true it was justified unless the defendant acted from malevolent motives. But if, as we take it, the ruling asked by the plaintiff was given, the judge showed by the words which he added that he did not mean to modify or revoke what he had said before and what the whole course of the trial made manifest, that the existence of a debt, if there was any, was an element to be considered in deciding whether the defence of truth was made out. Even if there was a debt, however, the plaintiff might have recovered upon one of several grounds: that the publication imported a general habit on the part of the plaintiff of not paying his debts, (whether it had that meaning was one question left to the jury,) or that although there was a debt there was a counter-claim in recoupment which manifestly justified the plaintiff in not paying until it was adjusted, or that the publication was caused with malicious intention.

4. Several rulings were asked on the question of privilege. As we have said, the case is to be considered solely on the footing of libel. From this point of view it is perfectly plain that the judge could not have ruled that the communication was privileged as matter of law. The jury well might have found facts that would cut at the roots of such a ruling. They might have found not only that the proposition that the plaintiff was a

man who refused or neglected to pay his honest debts was false, as they have found, but also that it was known by the defendant to be false. They might have found that it was volunteered for malevolent motives. They might have found that the whole organization was a mere scheme to oust the courts of their jurisdiction, and to enforce colorable claims of the members by a boycott intended to take the place of legal process, and that there was no pretence of any duty about the matter. Indeed, it is hard to see how the by-laws or any understanding of the defendant about the by-laws could have afforded him a justification, as the by-laws merely expressed the terms on which he saw fit to enter into a voluntary organization. A man cannot justify a libel by proving that he has contracted to libel. More specifically, a false statement of a kind manifestly hurtful to a man in his credit and business, and intended to be so, is not privileged because made in obedience to the requirements of a voluntary association got up for the purpose of compelling by a boycott the satisfaction of its members' claims to the exclusion of a resort to the courts.

We do not assume that the character of this organization was what we have described. We only say that the jury might have found it to be such, and that the requests for rulings do not exclude that possible view of the facts. Of course we do not mean to say that the statement might not have been privileged if believed to be true, and if the purpose of the association and publication was and was understood to be merely to give information to the members concerning the credit of people with whom they might deal. But none of the requests were limited to such a state of facts. The difficulty in supposing it is that the by-laws expressly require the members to have no dealings with any person whose name is on the list.

5. The fifth request that, if the plaintiff set up the monument, exercised control over it, and retained part of it in Rochester, the contract was not rescinded and the plaintiff was indebted to the defendant when the latter reported his name, was covered by more accurate instructions upon the same point, leaving to the jury as a question for them whether the plaintiff retained the monument for an unreasonable time, or used it in an unreasonable manner. It is to be observed further in this

connection that the important question was not so much whether the contract was rescinded as whether the defendant had broken it. If the plaintiff had not rescinded but had made a claim in recoupment, that equally would have explained his not paying the bill.

6. It hardly needs to be said that the judge was right in refusing to rule that the defendant was not responsible for what the association or their officers did under their by-laws in con· nection with publishing the plaintiff's name. The whole and avowed purpose of the defendant in sending in the plaintiff's name was that the officers should do what they did.

*Exceptions overruled.*