E. EVERETT ANDROVETTE *vs.* EDWARD S. PARKS.

Bristol. October 25, 1910. — November 22, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Sale. Warranty.*

At the trial before a judge without a jury of an action of contract for loss alleged to have been sustained by an unwarranted refusal on the part of the defendant to receive and pay for certain shellac refuse, called "No. 2 keeri lac," which the defendant had agreed to purchase from the plaintiff, the defendant contended that the keeri lac was sold to him by sample, and that that tendered by the plaintiff was not of the quality of the sample. There was evidence tending to show that at the time of the sale neither the plaintiff nor the defendant knew much about the "No. 2 keeri lac," that after an interview between them the plaintiff sent to the defendant a type sample of what he understood "No 2 keeri lac" looked like, that then the defendant agreed in writing to purchase of the plaintiff a certain quantity of "No. 2 keeri lac (Shellac Refuse)" without further description, and that the plaintiff tendered to the defendant what answered to the general character of "No. 2 keeri lac;" and upon abundant evidence the judge found that there was no sale by sample, but that the "so called sample sent by the plaintiff to the defendant was simply intended to represent the general character of 'No. 2 keeri.'" The finding was for the plaintiff; and the defendant alleged exceptions to the refusal of the judge to rule in accordance with his contention. *Held,* that on the facts as found by the judge the contention of the defendant was without foundation.

At the trial of an action for loss alleged to have been caused by an unwarranted refusal on the part of the defendant to receive and pay for certain shellac refuse called "No. 1 keeri lac," it appeared that the defendant agreed in writing with the plaintiff to purchase the merchandise under the description "No. 1 keeri lac" while it still was in India, that on its arrival in New York, in response to a request by the plaintiff that he examine it before shipment, the defendant asked the plaintiff to send him samples. Upon the plaintiff's doing so, the defendant refused the merchandise, asserting that it was not of the right quality. There was no question as to the good faith of the plaintiff in the selection of the

samples. There was evidence that the merchandise offered answered the description, " No. 1 keeri lac." The judge found for the plaintiff. *Held,* that the finding was warranted.

CONTRACT for loss alleged to have been sustained by reason of the defendant's refusal to receive and pay for three hundred bags of " No. 2 keeri lac " and one hundred bags of " No. 1 keeri lac," which the plaintiff alleged that the defendant had agreed to purchase from him. Writ dated May 2, 1907.

In the Superior Court the case was heard by *Stevens,* J., without a jury. It appeared that the plaintiff was a dealer in shellac and other gums in New York. The defendant was engaged in Fall River in the manufacture of shellac varnish from a refuse gum known as " keeri lac." Keeri lac is the name for the refuse composed of gum and a large portion of bark, sticks, seeds, dirt and other foreign ingredients resulting from the manufacture or preparation of shellac gum in India. This keeri lac is sent to the United States in bags and is sold to varnish and shellac manufacturers who dissolve out the gum by a variety of processes. The best of the keeri lac, which comes from Calcutta, is sometimes sold in the New York market under the designation of " superior or No. 1 keeri lac." Neither the plaintiff nor the defendant were familiar with " No. 2 keeri lac."

On or about June 6, 1906, the defendant, who had never before done any business with the plaintiff, called at the plaintiff's place of business in New York. While there the parties had some talk about No. 2 keeri lac and the plaintiff offered to sell the defendant some. The defendant said he did not know what it was and asked plaintiff whether he had a sample. The plaintiff, according to his testimony, thought he said he had a type sample, merely showing what No. 2 keeri looked like, but that it was not at the moment available. According to the defendant's testimony the plaintiff did not say that it was merely to show what the No. 2 looked like, but did say that No. 2 was the same as the No. 1 except that it had less gum in it. Afterwards the plaintiff submitted a type sample of No. 2 keeri lac to the defendant, on June 7 addressing a letter to the defendant at Fall River offering him two hundred bags of No. 2 keeri lac at five and three-fourths cents per pound. The defendant, after inspecting the type sample, accepted the offer, which a few days later was

embodied in a contract, of which the following is the substance: " June 11, 1906. Sold to Edward S. Parks. Fall River, Mass. Acc't E. E. Androvette. New York. Two hundred (200) bags No. 2 keeri lac (Shellac Refuse). Invoice shipping weights at Calcutta and tares. . . . ex S. S. 'Bechuana.' Price: — $5\frac{3}{4}$ cents per pound. . . . Accepted. E. S. Parks. Contract No. 453."

A few days thereafter the plaintiff wrote to the defendant offering him another one hundred bags of No. 2 keeri lac at the same price and also one hundred bags of superior No. 1 keeri lac at twelve cents per pound. The defendant accepted this offer, which in a few days was embodied in a contract similar to the foregoing.

On or about October 1, 1907, the plaintiff made delivery in Fall River of three hundred bags of merchandise purporting to be No. 2 keeri lac. The defendant made examination of the shipment at the railroad, opening about twenty bags. He took from some of these twenty bags a number of samples. These samples, he testified, he considered fair ones and he examined them and concluded he did not want the stuff. As a result of this examination the defendant rejected the entire lot and notified the plaintiff by letter that the merchandise delivered at Fall River was not what he bought; that he had no use for it and could not accept it.

On or about November 1, 1907, the plaintiff notified the defendant that there had arrived from Calcutta the one hundred bags of superior or No. 1 keeri lac and that, on account of the defendant's having rejected the other shipment, he preferred not to send them to Fall River and would like to have the defendant make a dock examination at New York and accept or reject the goods at that place. The defendant replied that, if the goods were No. 1 keeri lac, he would accept them, and requested the plaintiff to draw samples and send them to him. In consequence of this the plaintiff drew samples from the goods on the dock and sent the same to the defendant. The defendant made examination of these samples and notified the plaintiff that if they were fair samples he would not accept the lot as No. 1 keeri lac. The plaintiff replied that the goods were No. 1 keeri lac and that he should cause them to be sold and any loss charged

to the defendant. The plaintiff testified that two days later, having been notified by the steamship company to remove the goods, he resold both lots at a loss.

The bill of exceptions contained the following statement: " The defendant's counsel stated that no claim was made that the samples of No. 2 keeri lac sent by the plaintiff to the defendant were actual samples from the lot or lots to be sold, but that the samples were furnished by the plaintiff to the defendant for the purpose of informing the defendant of the nature and quality of the particular merchandise which the plaintiff was offering the defendant under the designation of No. 2 keeri lac, and that the defendant was entitled to receive merchandise of substantially the same nature and quality."

The defendant asked the judge to rule (1) that on all the facts the plaintiff was not entitled to recover; (2) " For the purposes of this case, No. 2 keeri must be regarded as substantially the same as the sample sent by the plaintiff to defendant"; (3) " The defendant is not bound by a special understanding of the meaning of a sale by sample contrary to or at variance with the general understanding of a sale by sample in mercantile transactions, unless knowledge of the special understanding in a particular trade is brought home to him"; (4) " The plaintiff is bound by sending of sample as No. 2 keeri to offer substantially equivalent goods in fulfilment and is estopped to show that anything of lesser value was regarded in the trade as No. 2 keeri "; (6) " If both the plaintiff and the defendant were ignorant of the trade understanding of the nature of No. 2 keeri, the sample sent by plaintiff was agreed upon by them to represent No. 2 and the plaintiff was bound to furnish goods substantially similar in components and proportions."

The judge filed the following memorandum: " I refuse to rule as above requested for the reason that I find as a fact, on all the evidence, that the goods were not sold by sample, but the so called sample sent by the plaintiff to the defendant was simply intended to represent the general character of No. 2 keeri "; and found for the plaintiff. The defendant alleged exceptions.

*W. C. Gray,* for the defendant.

*J. M. Morton, Jr.,* for the plaintiff.

BRALEY, J. The sales were of two kinds of refuse gum, or

shellac, which were to be used by the defendant in the manufacture of shellac varnish, but, not being carried in stock, they were to be purchased by the plaintiff and shipped to the buyer.

Having been sued for a breach of both contracts, the defendant contends as to the number two refuse, that it was sold by sample with an implied warranty that the bulk of the purchase should equal the sample not only in kind, but in quality, and that, the warranty having been broken, the plaintiff cannot recover. But the contracts, which, after verbal negotiations and letters between the parties were reduced to writing, having contained on the face of the writing no reference to such a stipulation, the goods must be deemed to have been sold only by description. *Weston* v. *Barnicoat*, 175 Mass. 454. Yet if no fixed standard as to the proportion, or uniformity of the ingredients of which they were composed appears to have been known to the trade, and the judge upon ample evidence found specifically that the specimen which the plaintiff sent to the defendant was not intended to represent a portion of the whole, but was only indicative of the general character of the article, the defendant was entitled to assume that when shipped the goods would be of the kind designated. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474, 476. *Putnam-Hooker Co.* v. *Hewins*, 204 Mass. 426, 430.

If as to the other purchase, the defendant had the right before acceptance to a reasonable opportunity of examination, he did not avail himself of it when notified by the plaintiff of the arrival of the No. 1 keeri lac, with the request that he make a "dock examination" before delivery to the carrier, which by the terms of the contract would have passed title. Instead of making an inspection the defendant asked the plaintiff to act for him, and to draw and forward samples, but upon their receipt he refused to accept, claiming that the merchandise was not of the quality bought. The good faith of the plaintiff, and that the samples selected were fairly representative of the whole lot does not seem to have been questioned, and if their analysis as the defendant's chemist testified disclosed an unusually large percentage of rosin, yet the decisive question of fact common to both transactions was, whether the goods which were delivered and returned and those which were tendered and refused, conformed to the terms of sale. The judge's finding in favor of the

plaintiff having been warranted by the evidence is conclusive upon this point, and the defendant's requests were rightly denied. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89.

*Exceptions overruled.*