COMMONWEALTH *vs.* GEORGE H. PRATT.
SAME *vs.* GEORGE H. PRATT & another.
SAME *vs.* SOMERVILLE EVENING SUN.

Middlesex.   January 27, 1911. — May 17, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Libel and Slander,* Privileged communications.

In this Commonwealth a newspaper article containing false and defamatory statements of fact in regard to the conduct of one who is a candidate for a public office is not privileged and its author and publisher may be convicted of criminal libel, even if they reasonably and honestly believed the charges as stated to be true and acted in good faith.

Where, at the trial of an indictment for libel in the publishing of certain defamatory statements with regard to one W, who at the time of the publication was the mayor of a certain city and was a candidate for re-election, there is evidence that in publishing the statements the defendant acted with express malice, it is proper for the trial judge to refuse to rule, that, "assuming that W . . . was a candidate for re-election to the office of mayor at the time alleged in the indictment, then if the jury are satisfied that the charges as alleged in the indictment were reasonable criticism and comment upon the real acts of the said W, and the consequences likely to follow from said acts, no conviction can be

had under the indictment even though such criticism and comment were severe and sarcastic and tending to ridicule the said W," because such a ruling contains no reference to the possibility of conviction on the ground of express malice.

At the trial of an indictment for the publication of a libel regarding the mayor of a city who was a candidate for re-election, if the libel which the defendant is charged with publishing contains only statements of fact of a defamatory nature and the trial judge fully and adequately instructs the jury that if the statements were true the defendant should be acquitted unless he acted with express malice, the defendant is not harmed by a refusal of the judge to instruct the jury with regard to the law of qualified privilege, because if the statements were untrue or were published with express malice they would not be fair criticism or reasonable comment as to facts, and therefore could not be privileged.

At the trial of an indictment charging the publication of a libel stating that the mayor of a city, who was a candidate for re-election at an election to be held just after December 13 of a certain year, was intoxicated on a certain occasion, there was evidence tending to show the following facts: The defendant, who was a clergyman, called at the mayor's private business office on July 8 of that year, introduced himself as a correspondent of a newspaper of a distant city and in conversation accused the mayor with being intoxicated a few days before, which was the occasion described in the alleged libellous publication. The mayor denied the accusation. Subsequently the defendant gained access to the mayor's office under an assumed name and, being ordered out said, "You can't scare me. N [the opposition candidate for mayor] will attend to you." On November 22 the defendant stated to the chief of police of the city that he "had an article about" the subject matter of the alleged libel "all written up and sealed in a safe in the hands of a printer ready to be published at a word from him." On November 26 he wrote to the chief of police that he wanted "something done" in the matter "at once." On December 8 or 9 he interviewed the chief of police and stated that he had come to give the mayor a "last chance," that he had "a lot of matter prepared," and sought to make an appointment at noon of that day to show it to the chief of police. Asked what he would do if the mayor denied the allegations, he said he should publish them. Within the first ten days of December he was interviewed by a reporter, whom he knew to be the representative of a newspaper in which the alleged libel afterwards was published, and made to him the statements which were published on December 10. *Held,* that there was evidence warranting a finding that the defendant legally was responsible for the libel.

THREE INDICTMENTS FOR LIBEL, found and returned on January 6, 1910.

The third indictment was against a corporation which was the proprietor of a newspaper called the Somerville Evening Sun, and charged the publication of two libels, one on December 10 and the other on December 13, 1909, regarding one John M. Woods, then mayor of Somerville and seeking re-election. The article of December 10 charged in substance that Woods was intoxicated on the evening of July 5, 1909, at a celebration on Josephine Avenue in Somerville; that while mayor he aided

and abetted in the violation of the law relating to the sale of intoxicating liquors in Somerville, a no-license city; that he accompanied members of the committee of the fire department of the board of aldermen on an automobile trip to New Bedford, that liquor was taken along with the committee and that some members of the party were so intoxicated upon their return that night to Somerville that they were but a little short of helpless. The article printed in the issue of December 13, 1909, was an editorial which was in reply to a circular letter published by Woods denying the charges contained in the article of December 10. It referred to that article, reaffirmed it and stated among other things that " The Sun is prepared, Mr. Mayor, to prove each and every allegation it has made against you in these columns."

The first indictment charged George H. Pratt with the publication of the libel contained in the article published in the Somerville Evening Sun of December 10, 1909; and the second indictment charged Pratt and E. Eben Bayliss jointly with the publication of the libels contained in both of the articles.

The three indictments were tried together before *Bond, J.*

The evidence bearing upon whether the defendant Bayliss, who was a clergyman, legally was responsible for the libels or for any part of them was in substance as follows:

Testimony of Woods was to the effect that he saw the defendant Bayliss for the first time about July 8, 1909, at his office in East Cambridge; that at that time Bayliss was ushered into his private office and laid down his card which stated that Bayliss was a correspondent connected with the New York Tribune; that Bayliss stated to him that he was sent by the Tribune to investigate the result of no license in the cities of Massachusetts, and asked what was the experience in Somerville. Woods replying, " Very satisfactory," Bayliss said, " By the way you were on Josephine Avenue the night of the fourth of July?" Woods said, " Yes, sir." Bayliss said, " You were drunk." Woods said, " What, sir?" Bayliss said, " I have six or eight affidavits to prove that." Woods said, " Publish one of them and I will prosecute the signers to the full extent of the law. Good-day." Bayliss called Woods on the telephone about two weeks later and said, " I am the man who talked with you about the Jose-

phine Avenue affair." Woods recognized the voice as that of Bayliss and told him that he had no time to talk with him and hung up the telephone. Woods had another talk with Bayliss at his private office at the city hall. Bayliss was introduced by the mayor's private secretary as Mr. Saville. When he came into the door of the office Woods recognized him. He had a green bag, pulled out a slip of paper and left it. Woods said, " Get out of this office as quick as you can," and he did, saying as he went out, " You can't scare me. Nolan will attend to you." Nolan was the democratic candidate for mayor in opposition to Woods.

One Carter, lieutenant of the Somerville police, one Kendall, chief of police, and one Damery, a police officer, testified that on November 22, 1909, they had an interview with the defendant Bayliss, in which, among other things, Bayliss said that he had an article about the Josephine Avenue affair all written up and sealed in a safe in the hands of a printer ready to be published at the word from him, Bayliss; that he did not give the name of the printer ; that on November 26, 1909, Bayliss wrote to Kendall a letter as follows :

" I have not heard from you (as you promised) regarding the matter about which you and others came to see me. As the time is drawing near for the decision of the case I want that something shall be done *at once.* I understand that the gentleman under consideration is on the program for an address, in the interests of *no-license,* in the Rev. Mr. Grant's church, the Sunday evening prior to election. Would it not be wise to have a settlement of the question, which is vital, before the public have to render their decision? As you, with the other gentlemen, were the emissaries from my friend, I continue the motion with you ; otherwise I should have taken up the case with the *party of the first part.* Prompt attention to this matter will illuminate the situation greatly."

One Lowe testified that in December, 1909, he was a newspaper reporter in the employ of the Somerville Evening Sun ; that some time during the first week or ten days of December, 1909, he went to see the defendant Bayliss, and interviewed him ; that Bayliss told him the facts contained in the article published on December 10. He testified in detail, as to

each statement contained in the articles, that the defendant Bayliss told him each statement.

Upon cross-examination Lowe testified that the defendant Bayliss appeared to be somewhat provoked that the witness had called upon him, saying that he did not like to talk about the matter until he heard from the mayor, that he wanted to give the mayor a fair chance to answer a letter that he had written to him and that he did not wish a publication of the interview until the mayor had answered the letter.

Kendall, the chief of police of the city of Somerville, also testified that he had another talk with the defendant Bayliss on December 8 or 9, 1909, at the police station, that Bayliss came of his own accord to his office between nine and ten o'clock in the morning and said, " In view of your not coming to see me I thought that I would come and see you. I have an appointment with a number of prominent citizens this afternoon at three o'clock, and as long as you acted for the mayor I came to give you the last chance. I have a lot of matter prepared, and if you will meet me at Young's Hotel to-day at twelve o'clock I will show you what I have." Kendall said to him, " By way of illustration, supposing that Mayor Woods should deny your allegations ? " Bayliss said, " In that event I shall publish them." Kendall said, " By the way of illustration, suppose that Mayor Woods should admit them, what then ? " He said, " I would treat him as a brother. I have spent about ten days gathering this information, and I would treat him fairly in the matter."

At the close of the evidence the defendant Bayliss requested that a verdict of " not guilty " be ordered in the case against him. The presiding judge refused the request.

All of the defendants made numerous requests for rulings. The twenty-first and twenty-second rulings asked for by the defendant Bayliss and refused by the judge, as stated in the opinion, were as follows :

" 21. Assuming that John M. Woods, named in the indictment, was a candidate for re-election to the office of mayor at the time alleged in the indictment, then if the jury are satisfied that the charges as alleged in the indictment were reasonable criticism and comment upon the real acts of the said John M. Woods, and the consequences likely to follow from said acts, no conviction

can be had under the indictment even though such criticism and comment were severe and sarcastic and tending to ridicule the said John M. Woods.

" 22. If the jury are satisfied that the defendant Bayliss merely quoted or referred to statements as made by other persons with whom he talked and that he added nothing thereto, nor gave such quotations new sanction, except fair comment and criticism then the same were privileged, and said defendant Bayliss cannot be convicted under the indictment without proof of actual malice."

All of the defendants were found guilty and alleged exceptions. Other facts are stated in the opinion.

*S. L. Powers*, for the defendants Pratt and the Somerville Evening Sun.

*W. F. Porter*, for the defendant Bayliss.

*J. J. Higgins*, District Attorney, for the Commonwealth.

KNOWLTON, C. J. These exceptions were taken at the trial of three indictments, all growing out of publications of alleged libels in the Somerville Evening Sun, a newspaper published in Somerville. The person alleged to have been libelled was John M. Woods, then the mayor of Somerville and a candidate for re-election. An important question is raised by the exceptions in reference to the extent of the qualified privilege enjoyed by voters in discussing the character and qualifications of a public officer who is a candidate for re-election.

One of the defendant's requests for rulings was as follows: "Assuming that the John M. Woods named in the indictment was a candidate for re-election to the office of Mayor of Somerville on or about December 10, 1909, then the printing and publication of the charges as alleged in the indictment was privileged and no conviction can be had of either defendant if the jury are satisfied that he believed said charges and had reasonable ground for his belief in them and acted in good faith in uttering them, unless actual malice is proved." The charges alleged in the indictment were of misconduct, of intoxication, and of maladministration of office, and were plainly defamatory. The subject to which they purported to relate, namely, the fitness of Woods to hold the office of mayor, was one of public interest, and was especially of interest to the voters of the city of

Somerville. It is the rule everywhere that fair and reasonable comment and criticism upon the acts and conduct of public men, and especially of candidates for public office, are privileged, if made in good faith. But it is generally held that this privilege does not include the right to make false statements of fact, or falsely to impute to an officeholder malfeasance in office. On the other hand, it is held in some jurisdictions that if erroneous, defamatory statements of fact are made by a voter in good faith, without malice, against a candidate for office, in an honest belief, founded on reasonable and probable grounds, that the statements are true, they are protected by the privilege of the voter. See cases cited in 18 Am. & Eng. Encyc. of Law, (2d ed.) 1040, 1042, notes; 25 Cyc. 400, 404, notes.

In this Commonwealth it has been decided that false statements of fact in regard to the conduct of a public man are not privileged, merely because the manner in which he performs his public duties is a matter of general interest to the people whom he was chosen to serve, while comment and fair criticism are permissible, even though they are very disparaging. This distinction is pointed out and affirmed in *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, and is reasserted in *Dow* v. *Long*, 190 Mass. 138, 141, and in *Hubbard* v. *Allyn*, 200 Mass. 166, 170. The only question upon this part of the case that is not covered by our decisions, is whether the rule limiting privilege to fair comment and criticism, as distinguished from erroneous statements of fact, made honestly, shall be applied to publications in regard to candidates for a public office, as it is applied to publications in regard to the conduct of public men, and other ordinary matters of public interest. While there are dicta in our books that would furnish some ground for an answer in the negative, we are of opinion that the weight of reasoning and authority requires us to answer in the affirmative.

Most publications in regard to candidates for office are general, and reach a large number of persons besides those who are interested as electors. Moreover, many of the charges touching conduct and private character affect only remotely the fitness of the candidate for the performance of the duties of a particular office, while, if false, they may be exceedingly damaging. These and other considerations, make it proper to limit the privilege as to

statements touching only the general interest of the whole community, and likely to become generally known, as it is not limited in making statements to a particular person to whom one owes a duty, as in answering an inquiry as to the character of a servant. We are of opinion that there was no error in the refusal of this request. For other cases in Massachusetts bearing upon the general subject, see *Commonwealth* v. *Clap*, 4 Mass. 163; *Dodds* v. *Henry*, 9 Mass. 262; *Bradley* v. *Heath*, 12 Pick. 163; *Curtis* v. *Mussey*, 6 Gray, 261; *Smith* v. *Higgins*, 16 Gray, 251; " *Joannes* " v. *Bennett*, 5 Allen, 169; *Commonwealth* v. *Wardwell*, 136 Mass. 164; *Haynes* v. *Clinton Printing Co.* 169 Mass. 512.

As to all the charges alleged to be libellous, the jury were instructed that if they were true, the defendant should be acquitted. R. L. c. 219, § 8.

The defendant Bayliss' twenty-first request for an instruction was rightly refused because it did not refer to the possibility of conviction on the ground of express malice. We are also of opinion that this and his twenty-second request and other similar requests were rightly refused, because the charges relied on by the Commonwealth were all of matters of alleged fact and none of them purported to be made as reasonable criticism or comment upon the real acts of Woods, or the consequences likely to follow from his acts. The requests were, therefore, inapplicable to the evidence.

The instruction that the truth, if proved, was a justification of the statements, in the absence of express malice, sustains so much of the defense as was applicable to these charges under the law. If the charges as to matters of fact were shown to be true, there was complete justification, as there was nothing else left that was libellous. If they were not true, there was no part of the defamatory language that was a fair criticism and reasonable comment on facts. The defendants were not injured by the failure of the judge to instruct the jury as to the law of qualified privilege.

The defendant Bayliss contends that there was no evidence that would warrant the jury in finding him legally responsible for the libels, or any part of them. We are of opinion that the judge was right in leaving to the jury the question whether he arranged to state libellous matter to a person representing the newspaper,

and whether it was so published in pursuance of that arrangement. Although there was some contradiction, there was much evidence and many circumstances tending to show that he intended that this libellous matter should be published against Woods, and there was no dispute that he furnished the substance of it to the reporter of the newspaper, knowing that it was being taken with a view to its ultimate publication. Without reviewing the testimony, we are of opinion that there was no error in this part of the case.

*Exceptions overruled.*