## No. 16,057.

LINDSEY, DOING BUSINESS AS WALTER LINDSEY LUMBER AND SUPPLIES *v.* STALDER ET AL., DOING BUSINESS AS STALDER MERCANTILE COMPANY.

(208 P. [2d] 83)

Decided April 11, 1949.  Rehearing denied July 11, 1949.

Mr. MORRIS RIFKIN, for plaintiff in error.

Messrs. WOOD, CRAGER & RIS, for defendants in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error was defendant in the trial court and defendants in error were plaintiffs. We will herein refer to them as they there appeared.

Defendant was a dealer in lumber and building material. Plaintiffs were engaged in the building and construction business and operated a wood products mill in which the millwork items required by their operations were produced.

On March 5, 1946, plaintiffs ordered from defendant a carload of lumber. The said order was in writing and described the lumber ordered as follows: "#2 Common & Btr rough green Alder, with Maple developing." The order signed by plaintiffs, in addition to the foregoing description of the lumber purchased, contained the following: "The above material to be sent some place on the coast for kiln drying in transit. When the kiln drying mill is thru with the car they are to ship it to the Stalder Mercantile Company at *Connors,* Colorado. All milling, transit, and drying charges for the account of Stalder Mercantile Company and the mill is to send their invoices direct to Stalder Mercantile Company, 2239 E. Colfax, Denver, Colorado."

Forthwith upon receipt of plaintiffs' order defendant ordered the lumber from the Morton Lumber Company of Seattle, Washington. The plaintiffs paid to defendant the sum of $1,132.04 prior to the delivery of any lumber, which sum was the full amount due defendant on account of said purchase. Plaintiffs paid additional sums to Oregon business firms for milling, transit and drying charges. The lumber, as thus worked upon at plaintiffs' cost, did not arrive in Denver until November 14, 1946. Plaintiffs then inspected the lumber and refused to accept it, claiming that it was inferior to the quality and grade of lumber specified in their order, and unfit for the uses for which it was purchased. Thereupon the lumber was sold to the Davis Furniture Company of Denver for the sum of $1,595.11. The evidence is not clear as to who procured this purchaser. It is clear, however, that the parties in-

tended that the lumber should be resold and that the money received therefrom should be paid to plaintiffs.

Upon plaintiffs' refusal to accept the lumber when it arrived in Denver, defendant inspected the shipment and one of the plaintiffs testified that defendant made the statement that, "It was terrible, he had seen better lumber than that burned, it just wasn't on grade, wasn't what it was supposed to be." Referring to the statement of the defendant at the time of inspection by him, plaintiff Walter J. Stalder, Jr. further testified that the defendant said that, "it wasn't what we ordered, that the grade wasn't No. 2 common, and wasn't what the invoice stated." Thereafter the defendant protested the quality of the lumber to the Morton Lumber Company and, in the presence and at the solicitation of plaintiffs, defendant wrote the Morton Lumber Company stating in substance that Mr. Stalder had suffered a loss, "Due to the poor grades- and badly milled lumber." He further stated, "I know something about grading hardwood because we handle quite a lot of hardwood from the southeast and I have never shipped any No. 2 which is as bad as this is."

It is undisputed that defendant knew nothing about alder wood, that he had never handled alder wood prior to the instance in question, and that plaintiffs placed the order after their own employees had recommended it. Walter J. Stalder, Jr., in this connection testified as follows: "Q. Following the advice of your men, you placed the order with the Walter Lindsey Lumber and Supplies? A. Yes, sir." Prior to the placing of the order by plaintiffs a small sample of alder wood was shown by defendant to one of the plaintiffs and the defendant stated, "Here's what it looks like."

The trial court found the issues in favor of the plaintiffs and against defendant and entered judgment for the sum of $472.60 and costs, which was the difference between the total expenditures made by plaintiffs and the sum received upon the resale of the lumber.

Defendant contends that plaintiffs failed to meet the

burden of proof resting upon them to establish that the lumber which was delivered at Denver after being kiln-dried, resawed and milled in Oregon, was not in conformity with plaintiffs' original order for "No. 2 Common & Btr rough green Alder." The defendant further contends that by working upon, milling and kiln-drying the lumber, its character was so changed that it was impossible to determine in Denver whether or not it was properly graded as "No. 2 Common & Btr rough green alder," before being processed in Oregon.

Plaintiffs assert that the judgment should be affirmed upon three grounds, namely, (1) That there was a breach of an implied warranty that the bulk should correspond with the sample submitted as to quality; (2) That since the defendant knew the particular purpose for which the lumber. was required there was shown a breach of an implied warranty that the lumber should be reasonably fit for such purpose; and (3) That the transaction amounts to a sale of goods by description and that there was shown in the evidence a breach of the implied warranty that the lumber would correspond to the description.

Questions to be Determined.

First: *Does the fact that defendant exhibited a small piece of alder wood and made the statement, "Here's what it looks like," give the transaction the characteristics of a "sale by sample," carrying with it a warranty that the bulk shall correspond with the sample in quality?*

This question must be answered in the negative. It is clear from the evidence that the purchasers did not rely on any representations of the defendant concerning the quality of the lumber. They knew that defendant had never handled any alder wood and was not at all familiar therewith. The record discloses that the chief reliance of plaintiffs in ordering the "rough, green alder," was the recommendation of their own employees. There is nothing in the record to indicate that the small sample exhibited was "rough, green alder," but every indication

is that such sample was not·in the rough, green state. Thus it is apparent that the sample exhibited was not even the kind of material ordered by plaintiffs. Plaintiffs purchased only "rough, green" lumber. The burden of proof was upon them to establish that the sample shown them was exhibited as a fair representation of the bulk of what they ordered; that they relied thereon; and that the sample induced the sale. There is no evidence *tending to* show these essentials of a sale by sample. In 46 American Jurisprudence at page 552, is the statement: "If the contract of sale is connected by the circumstances attending the sale with the sample, and refers to it, and the sample is exhibited as the inducement to the contract, the contract of sale may be a contract of sale by sample, with the consequence that the seller warrants the bulk of the goods to correspond with the specimen exhibited as a sample. However, the mere circumstance that the seller exhibits a sample at the time of the sale does not of itself make it a sale by sample, so as to subject the seller to liability on a promise or warranty as to the nature and quality of the goods, because it may be exhibited not as a promise or warranty that the bulk corresponds to it, but merely to enable the purchaser to form a judgment on its kind and quality."

In *Weston v. Barnicoat,* 175 Mass. 454, 56 N.E. 619, it was held that a sample of granite sent by a seller did not become a part of a subsequent contract for delivery of a monument. The court said: "* * * the letter made the test of performance conformity to the words of description used, not conformity to the piece of stone previously shown."

So in the case at bar, the test of defendant's performance was conformity to the words of description used, namely, "rough, green alder," and not conformity with the piece of finished wood exhibited.

█ Second: *Is there here present a breach on the part of the defendant of an implied warranty that the lumber ordered would be reasonably fit for the particular pur-*

*pose for which the same was purchased by plaintiffs?*

This question is answered in the negative. Section 15 (1), chapter 228, Session Laws 1941, provides: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." The essential elements set forth in the statute which give rise to the implied warranty under discussion are wholly absent in this case. There is no evidence that defendant was informed concerning the "particular purpose for which the goods were required." There is no evidence that plaintiffs relied "on the seller's skill or judgment" concerning the uses to which alder might be put. It affirmatively appears, however, that plaintiffs did not place reliance upon the "skill or judgment" of defendant, because they were fully advised that he had no experience with alder wood.

■ Third: *Does the transaction between the parties amount to a "sale by description" in which there is an implied warranty that the lumber will correspond to the description; and, if so, is any breach of such warranty shown?*

It is clear that the parties consummated a "sale of goods by description" as those words are used in section 14, chapter 228, Session Laws 1941, which provides inter alia that: "Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description * * *." The description given in the contract was a quantity of "#2 Common & Btr rough green Alder, with Maple developing." The test of defendant's performance is whether or not there was conformity to the words of description used. The plaintiffs had the burden of establishing this lack of conformity. If there is competent evidence to sustain such lack of conformity, the judgment of the trial

court should not be disturbed. If there is an absence of such evidence the judgment cannot be permitted to stand. Accordingly, we review the evidence.

Plaintiffs, having ordered "#2 * * * rough green Alder," and intending to change the character thereof by resawing to smaller dimensions, machining and kiln-drying the lumber at their expense before delivery, are confronted with the difficulty of establishing lack of conformity to the description in the contract, by witnesses who at no time saw the lumber in the "rough green" stage. The time to correctly grade lumber as "#2 rough green" or otherwise would certainly appear to be when the lumber was still in the "rough green" state. It may be true that the finished product as delivered to plaintiffs in some form other than "rough green" was not what either the plaintiffs or defendant expected; however, this fact does not necessarily prove that plaintiffs did not get what they ordered.

Plaintiffs offered in evidence, and the court admitted, Exhibit M, which was a letter from the Morton Lumber Company in response to the complaint of defendant concerning the quality of the lumber. This letter, signed by H. P. Caldwell, contains the following:

"Alder is graded on National Hardwood Lumber Association grades plus some that OPA had added, and generally speaking Alder is graded at the originating mill as follows, in brief:

"#2 Com. Minimum cutting 3"x24", each board to yield 50% Clear One Face cuttings. No particular attention is paid to defects. It is the cuttings that are left that determine the grade. * * *"

This is the only specific statement in the record concerning the method of grading the lumber in question. The deposition of Mr. Caldwell contains the following: "Question. Did you see the lumber when it was in stock or loading?  Answer. Yes, when it was in stock and when it was loading.  Question. Was there any difference be-

tween the lumber ordered and the lumber shipped? Answer. No."

Herbert Hast, an expert witness of long experience in the lumber business, was called by defendant and testified that No. 2 common rough green alder could only be graded as such at the original sawmill, and before it was further worked upon. He said, "If there is a dispute in grading, it must be done before it enters in the milling process." He made the following statements, all of which are not in any manner contradicted by other evidence: "For instance, No. 2 common and better rough green will be graded on one basis, and No. 2 common surfaced green would be graded on a different basis." "It [the lumber here in question] would have to be disputed before it was reworked, because no certified grader will grade lumber except on the basis it is called for to be regraded. If it is on the surfaced basis, they will grade it on a surfaced basis as conditions may be." "* * * you can't grade surfaced lumber, for instance, on the basis of what it might have been in the rough green, or you cannot grade lumber after it has been resawn and say what it might have been prior to being resawn. Q. If an order is given for No. 2 rough green alder, that would mean in the rough? A. Yes, that is the way it would be graded. Q. After it is milled and kiln dried you couldn't tell what its grade was in the original state? A. No, you could not."

The witness Caldwell, having stated that there was no difference between the lumber ordered and that delivered, and the foregoing testimony of the witness Hast being undisputed in any way, the question is whether there is any evidence to support the judgment. All that appears is the fact that plaintiffs were displeased with the shipment, and that defendant thought the lumber inferior and in order to keep good will endeavored to satisfy his customer. Under the uncontradicted testimony of Hast, neither plaintiffs nor defendant could say whether the shipment was properly graded No. 2 common or better rough green alder at the time it was so graded.

There being no competent evidence to establish that No. 2 common or better rough green alder was not supplied as called for by the plaintiffs' order, and for the further reasons hereinabove assigned, the judgment is reversed.

MR. JUSTICE JACKSON and MR. JUSTICE HOLLAND concur.