Thomas F. DONOVAN, Assignee,
Intervenor, Appellant,

v.

WILSON SPORTING GOODS CO.,
Defendant, Appellee.

No. 5725.

United States Court of Appeals
First Circuit.

Jan. 5, 1961.

Rehearing Denied Jan. 31, 1961.

Amended Feb. 23, 1961.

Harold E. Cole, Boston, Mass., for appellant.

Louis R. Simpson, Chicago, Ill., with whom William H. Taylor, Jr., Boston,

Mass., R. Howard Goldsmith and Schneider, Dressler, Goldsmith & Clement, Chicago, Ill., on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an action for "unfair competition and unfair conduct," involving the right to make commercial use of the names of prominent persons as against one to whom such persons have purported to grant exclusive use. The court dismissed the complaint, but on a narrow ground. Plaintiff Globe Sporting Goods Corporation, prior to making a general assignment for the benefit of its creditors to intervening plaintiff Donovan, was a manufacturer and importer of sporting goods, notably baseball gloves. Defendant, Wilson Sporting Goods Company, is one of the country's largest manufacturers of such goods. An important sales promotion feature in this field is the use of well-known names. As Donald Duck sells toys and Davy Crockett once sold hats, a name such as Ted Williams is a valuable pitch to buyers of baseball gloves and bats. Some manufacturers, of which Wilson is a conspicuous example, enter into royalty contracts with prominent players for the exclusive use of their names, and support their acquisition with extensive advertising. Apparently a fielder's glove with a Ted Williams signature catches more eyes, even if it catches no more flies.[1] Others, including Globe, lacking such agreements,[2] sometimes offer gloves with a player's name in block print, followed by some word such as "Model" or "Style." Wilson claims this is dirty ball.

In the winter of 1958 Wilson demanded of Globe that it cease using the names of certain listed players who had allegedly given Wilson exclusive use. Globe replied that it always appended the word "Model" in such instances, and that, since this was an accurate statement about a public figure, it had the right to do so under Hanna Mfg. Co. v. Hillerich & Bradsby Co., 5 Cir., 1935, 78 F.2d 763, 101 A.L.R. 484, certiorari denied 296 U.S. 645, 56 S.Ct. 248, 80 L.Ed. 458. In Hanna it was held that where a ball player used a bat of certain dimensions, a manufacturer who copied the specifications could properly advertise that it was a "Gehrig style" or "Ruth style" bat. It is conceded, however, that Globe, other than distinguishing between catchers' mitts and fielders' gloves, arbitrarily assigned players' names to its various products without any attempt to follow the individual preferences of the players. But so did Wilson, the only difference between them being that Wilson had contracts with the players. What Wilson's buyers received is debatable. There was no proof adduced of what buyers understand a player's signature to mean, but we doubt whether it is simply a general endorsement of the quality and dependability of the manufacturer's equipment. Rather, it would seem that the name offers the user the "identification," or the assurance, that would flow from possessing a glove in the particular player's style, when in fact it is not. See Hanna Mfg. Co. v. Hillerich & Bradsby Co., supra, 78 F.2d at page 767. The ultimate question, which we do not reach, is whether the player can assign such a right of exclusive use, or misuse.

When Globe replied that it would resist Wilson's demands, Wilson commenced suit in the United States District Court in New York against Globe and one Katz, who was Globe's sole distributor. Service was obtained only upon Katz, and that suit has not been pressed. Globe then brought the instant action in the District of Massachusetts. At the

1. As hereafter discussed, it is conceded that no glove was "individualized to the particular player" by either Wilson or Globe.

2. There was a dispute, unresolved by the court, as to whether Globe had express rights with respect to certain of the pertinent players claimed by Wilson. This is presently immaterial as, admittedly, it did not have such rights as to all.

trial Wilson admitted that in March 1958 it wrote to all its dealers that its exclusive rights were being violated and that it intended to take action to protect them. It further admitted that it sent a copy of this letter to The Sporting Goods Dealer, a monthly trade magazine, which published an account thereof. Wilson included with this letter a copy of a supporting opinion of counsel. Lacking legal discernment, the magazine confused the cases cited, and concluded its report with the following sentence.

"A federal court ruling in New York back in 1953 made a point that the use of players' names on gloves or bats must have the athlete's approval even if 'style' or 'type' rather than a signature is used."

The report was also inaccurate in that it indicated that Wilson proposed to sue dealers as well as manufacturers and distributors. Wilson's letter was far less specific.

■ In point of fact, the Second Circuit case cited in counsel's memorandum,[3] while it did criticize Hanna, involved photographs upon packaged chewing gum, and is readily distinguishable. The magazine article thus considerably overstated Wilson's position and the strength of the authority behind it. Globe wrote Wilson complaining of this publication, but Wilson did nothing about it. It is not difficult to imagine that notice of an impending suit against them by a giant in the industry, armed with a federal court case, might dampen dealers' enthusiasm to handle the goods of an alleged infringing competitor. Plaintiffs' evidence indicates that the market thereafter dried up, and that Wilson's letter and the magazine article were the cause.[4] Or, as they express it in their brief, Wilson had successfully "put the finger on Globe's gloves."

■■ If this were the fact, Wilson could avoid liability only if its charge of unlawful conduct by Globe was true, that is to say, legally correct, or, even though incorrect, if the charge was made in bona fide exercise of a privilege to protect what it reasonably believed to be its rights. Wilson did not defend on the first of these grounds below, and expressly declined to do so here (although not conceding the opposite). In this posture we will not explore on our own initiative what would be at best a very complicated issue involving, *inter alia*, in view of the national publication, difficult questions of conflicts of law. Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R.2d 370, certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763; 48 Col.L.Rev. 932; Dale System v. Time, Inc., D.C.D.Conn.1953, 116 F.Supp. 527; O'Reilly v. Curtis Publishing Co., D.C.D. Mass.1940, 31 F.Supp. 364; Prosser, Interstate Publication, 1953, 51 Mich.L. Rev. 959.

With this lengthy background we come to the court's disposition. The court dismissed the action on the following grounds: (1) The article in The Sporting Goods Dealer "had no direct support from Wilson, but was a mere trade reference to a trade activity," and Wilson was not "in any way responsible for the publication." (2) Wilson's letter to its dealers was not unfair competition because "unfair competition, in Massachusetts, is limited to the passing off of one's goods as those of a competitor." (3) Wilson had a right to "advise its dealers or customers of any infringement of its rights" in the absence of bad faith, and there was no bad faith. (We take it the court meant "alleged rights" because it expressly did not determine whether the claim was valid.)

■ (1) Wilson considers plaintiffs' attack on the court's finding that it

---

3. Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 2 Cir., 1953, 202 F.2d 866, certiorari denied 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343.

4. If sending the letter to its dealers was privileged, but the article was not, the burden is on Wilson to separate the damages. Cf. Kimball v. Post Publishing Co., 1908, 199 Mass. 248, 254, 85 N.E. 103, 19 L.R.A.,N.S., 862.

was in no way responsible [5] for the publication in The Sporting Goods Dealer "amazing."[6] We, on the other hand, can only regard the finding as clearly erroneous. A party cannot send an item to a magazine that would deem it noteworthy and then claim irresponsibility, let alone amazement, when the publisher does what comes naturally. Commonwealth v. Pratt, 1911, 208 Mass. 553, 560, 95 N.E. 105; Weston v. Barnicoat, 1900, 175 Mass. 454, 459, 56 N.E. 619, 49 L.R.A. 612. Consequently, in judging Wilson's accountability, it must be on the basis of a publication to the entire group of subscribers of the magazine, and not simply to Wilson's own dealers to which the original letter was addressed. This could be a substantial difference. It is one thing to assure its dealers that it was going to sue allegedly unfair manufactures and distributors. It is another to circulate a threat to the entire trade.

(2) The court substantially understated the Massachusetts law with respect to unfair competition. However, for present purposes it is immaterial whether one calls Globe's claim unfair competition or something else. See Lawrence Trust Co. v. Sun-American Publishing Co., 1923, 245 Mass. 262, 266, 139

N.E. 655; Davis v. New England Ry. Publishing Co., 1909, 203 Mass. 470, 479, 89 N.E. 565, 25 L.R.A.,N.S., 1024.[7]

(3) The court's finding that Wilson's letter was sent to its dealers in subjective good faith is in accordance with the only testimony. It may have been correct. There is no occasion to pause over this matter, however, because a much more serious question is presented by the magazine item. Even if a damaging publication is prima facie privileged and not actionable although untrue, the privilege may be lost by unnecessary publicity, Galvin v. New York, N. H. & H. R. Co., Mass.1960, 168 N.E.2d 262, or by the inclusion of statements known to be untrue or made without reason to believe they were true, Sheehan v. Tobin, 1950, 326 Mass. 185, 192–194, 93 N.E.2d 524. As already suggested, the publication in The Sporting Goods Dealer could be found to have covered too wide an audience.

In addition, the magazine article contained statements which were known by Wilson to be untrue. A trier of fact might well conclude that even if Wilson was not initially to blame for the magazine's overstatement of its position, its failure to attempt any correcting steps,

5. Globe contended that Wilson's responsibility was for the entire article, because it had itself caused the magazine's confusion by counsel's saying, without qualification. that Haelan Laboratories had reached a "different conclusion" from Hanna, when it must have realized the cases were distinguishable. We need not reach that question here, as this opinion applies to that part of the magazine article which correctly reported Wilson's letter to its dealers.

6. We feel called upon to say that defendant's brief, full of charges of "irresponsible statements," "insidious assertions," and "gileful allegations," is far from unique in unfair competition, trademark, and patent cases. We hope that all counsel may someday realize that such personal attacks rarely serve their clients, and are usually either unnecessary and uncalled for, or, worse, inaccurate. In this case it is the latter.

7. We are assuming, without deciding, either that, under Klaxon Co. v. Stentor

Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, the court correctly applied Massachusetts law according to Massachusetts principles of conflicts of law, see Black & Yates, Inc. v. Mahogany Ass'n, 3 Cir., 1942, 129 F.2d 227, 232, 233, 148 A.L.R. 841, certiorari denied 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539; Dale System v. Time, Inc., D.C.D. Conn.1953, 116 F.Supp. 527; Triangle Publications, Inc. v. New England Newspaper Publishing Co., D.C.D.Mass.1942, 46 F.Supp. 198, 203; 2 Harper & James, Torts § 30.7 (1956); Note, 1947, 60 Harv.L.Rev. 1315, or that, because neither party raised the conflicts question, the court correctly ignored the multistate nature of Globe's business and its alleged injury, cf. Jansson v. Swedish American Line, D.C.D.Mass.1950, 89 F. Supp. 557, 559, vacated on other grounds, 1 Cir., 185 F.2d 212, 30 A.L.R.2d 1385; Hanson v. Hanson, 1934, 287 Mass. 154, 157, 191 N.E. 673, 93 A.L.R. 701.

particularly after the article was brought to its attention in protest by Globe, was inconsistent with its claim to be acting in a good faith exercise of its privilege. Cf. Goodrich v. Stone, 1846, 11 Metc. 486, 492; Byrne v. Deane, [1937] 1 K.B. 818; Note, 1922, 35 Harv.L.Rev. 867, 869–70. There was, in other words, ample evidence warranting recovery for the magazine article, either for reporting the substance of the dealer letter, or for the entire article in embellished form.

Judgment will be entered vacating the judgment of the District Court and remanding the case for further proceedings not inconsistent herewith.