WILLIAM L. DAVIS *vs.* NEW ENGLAND RAILWAY PUBLISHING COMPANY & others.

Suffolk.   September 28, 1909. — October 27, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, To restrain unlawful interference with business. *Unlawful Interference. Unfair Competition. Equity Pleading and Practice*, Multifariousness.

In a suit in equity by the proprietor of an express business, carrying merchandise between Boston and many cities and towns in Massachusetts, Maine and New Hampshire, and also subletting portions of his office to express companies doing business in or near Boston, against a corporation publishing the "A B C Pathfinder and Dial Express List" and against two individuals alleged to control a majority of the local express companies whose names appeared in the publication of the defendant corporation, the bill alleged that the publication of the defendant corporation was intended and calculated to create in the minds of the public the belief that it contained the names of all the reputable local expresses doing business in Boston and its vicinity, and had come to be accepted by the general public as the recognized directory of local express companies, that the plaintiff and each of his subtenants was conducting a reputable express business in a lawful and proper manner and to the convenience and satisfaction of his and their patrons, but that the defendant corporation omitted in its publication any reference to the plaintiff or his subtenants and was about to bring out another issue of the same general publication and refused to include therein any reference to the business of the plaintiff or of his subtenants, refusing also to assign any reason for such exclusion, that the individual defendants, having

acquired a dominating influence in the local express business in Boston, were seeking to obtain an absolute monopoly of this business to the exclusion of the plaintiff, and had conspired together to prevent the publication by the defendant corporation of any reference to the business of the plaintiff and his subtenants, and by threats and false statements had induced the defendant corporation to leave the plaintiff and his business without mention in the publication. The bill alleged that the plaintiff had been injured greatly by the acts of the defendants, and prayed for injunctions to restrain them respectively from committing these alleged unlawful acts. Upon demurrers to the bill, it was *held*, that the publication of such a directory of express companies with the intentional omission of all mention of the plaintiff and his business was a violation of his legal rights by a continuing wrong, the injury from which could not be measured accurately in damages and which entitled the plaintiff to equitable relief; and that the individual defendants, who not only had participated in the wrongful publication but had instigated it by false statements and threats, also should be enjoined. *Held, also,* that the bill was not multifarious in seeking relief at the same time against the corporation and the individual defendants, who in different ways all were participating in the infliction of the same injury upon the plaintiff and his subtenants, it also being proper that the defendant corporation should be protected in the same suit from a continuance of the threats and false statements of the other two defendants.

Competition in business is not a justification for attempting to interfere with the business of a competitor by misstatements and by instigation of a false and misleading publication.

BILL IN EQUITY, filed in the Superior Court on September 13, 1909, by William L. Davis, of Chelsea, against the New England Railway Publishing Company, a corporation organized and existing under the laws of the State of Connecticut and having a usual place of business in Boston, Robert J. Kelley, having a usual place of business in Boston, and Edward J. Sampson of Boston. The bill was as follows:

" First. The plaintiff is the owner and holder of a lease of the premises known as 30 India Street, in the city of Boston; said premises are now fitted up as and for a general office for local expresses and such premises are in the actual possession of the plaintiff. The plaintiff, doing business under the name of the Northern Express Company, is the owner of an express business between the said city of Boston and the cities and towns hereinafter stated, to wit: Dover, Cocheco, Gonic, Rochester, Somersworth and Portsmouth, New Hampshire, Berwick and South Berwick, Maine, and Amesbury, Salisbury, Newburyport, Ipswich, Hamilton, Wenham and Salem, Massachusetts. The plaintiff also subleases portions of said premises to various other persons, doing an express business between the said city of Boston and the cities

and towns hereinafter stated: Samuel and Frank Flaherty, doing business under the name of Flaherty's Express, in the South End and Roxbury districts of said Boston; Herbert W. Rockhill, doing business under the name of Chapman's Express, in Malden, Massachusetts; Cornelius Keefe, doing business under the name of Keefe's Express, in Watertown, Massachusetts; Stephen Torney, doing business under the name of the Winthrop Despatch Company, in Winthrop, Massachusetts; Arthur B. Hall, doing business under the name of Hall's Express, in Charlestown District of said Boston. The plaintiff and each of his subtenants has expended large sums of money in purchasing the necessary equipment for his said business and in developing its good will, and each is now actually engaged in the lawful prosecution of such business.

" Second.   The defendants Kelley and Sampson jointly or severally conduct, manage and control a large number of local general express offices in said Boston; they have acquired a dominating influence in that business in Boston, and they seek to obtain an absolute monopoly of that business to the exclusion of the plaintiff.   Several express businesses controlled by Kelley and Sampson, jointly or severally, or whose owners have offices in the local general offices controlled by Kelley and Sampson, jointly or severally, are in competition with the businesses of the plaintiff or of some of his said subtenants.

" Third.   The defendant, the New England Railway Publishing Company, is engaged in the business of publishing a certain publication known as the ' A B C Pathfinder and Dial Express List.'   This publication is the only one of its kind issued or in circulation in Boston.   The publication is in a form intended and calculated to create in the minds of the public the belief that it contains the names of all the reputable local expresses doing business in Boston and vicinity.   It has created, and does now create, such belief in the minds of the public.   This belief is the main, if not the sole, reason inducing purchases of the publication by the public.   This belief has enabled the defendant corporation to obtain a large circulation among the business houses and general public in Boston and vicinity.   The publication is usually and frequently consulted by persons having occasion to employ a local express.   It has come to be accepted by

the general public as the recognized directory of local express companies.

" The publication, as heretofore issued, contains on its face in very heavy black type the words ' Express List.'   The reading matter within is headed by the words, — ' A B C Pathfinder and Dial Express List.'

" It then states :  ' To find the express running to a given town or city consult the alphabetical list in the narrow columns.'

" ' To ascertain office and hours of departure of any express, see list of expresses in the wide columns.'

" It then prints in a conspicuous place and in heavy type a list entitled ' Local General Express Offices and Telephone Nos.,' and specifies the street address and telephone number of some twenty (20) local general express offices.   This is followed by an alphabetical list of nearly four hundred (400) expresses, stating also the location of their offices and the hours of departure of their expresses.   This is followed by an alphabetical list of several thousand cities and towns in New England, New York, and elsewhere, followed by the names of the expresses doing business in such cities and towns.   All of which will more fully appear from a copy of the said publication issued on June 15, 1909.

" Fourth.   The plaintiff is informed and believes, and therefore alleges, that the defendant corporation derives an income from the advertisements asserted in said publication, and from the sale of copies thereof ; that it makes no charge to the owners of the express businesses mentioned in its lists but that such owners furnish the necessary data regarding their respective businesses for publication.   By the receipt and publication of this data a business relation is constituted between such owners and the defendant corporation which is to their mutual advantage and profit.

" Fifth.   The defendant corporation intends to bring out another issue of said publication on or about September 15, 1909, substantially in the form of the issue of June 15, 1909, and the plaintiff has requested the defendant corporation to include in the list of general express offices and telephone numbers the location of 30 India Street, and the number of the telephone at said address, and to make such reference to the express businesses

of his subtenants as is made to other express businesses in said list. The defendant corporation has refused and still refuses to make such reference in the said publication.

" Sixth. The plaintiff and each of his subtenants is conducting his express business in a lawful and proper manner, and to the convenience and satisfaction of his patrons, and no good reason exists why the defendant corporation should discriminate against them, or any of them, or should exclude reference to them, or any of them, from its publication.

" Seventh. The defendant corporation utterly refuses to assign any reason for so excluding reference to the plaintiff and his subtenants in its publication.

" Eighth. The plaintiff is ready and willing, and the defendant corporation well knows that he is ready and willing, to pay to it such sum, if any, as is charged to other express companies for the reference to them in said forthcoming publication, provided similar reference is given to the plaintiff and his subtenants, but the defendant corporation persists in its refusal to make such reference. The plaintiff hereby offers to this honorable court to do all acts in the premises which this court shall determine that he in equity ought to do.

" Ninth. The exclusion of such reference to the plaintiff and his subtenants in said publication of the defendant corporation will enure greatly to the advantage of the defendants Kelley and Sampson.

" Tenth. The defendants Kelley and Sampson jointly or severally control a majority of the general local expresses listed in said publication. The plaintiff is informed and believes, and therefore alleges, that Kelley and Sampson have conspired together to induce the defendant corporation to exclude such reference to the plaintiff and his subtenants in said publication, and, in pursuance of such conspiracy, have induced the defendant corporation to refuse to make any such reference; that they have induced the defendant corporation so to refuse partly by stating to the defendant corporation that the business of the plaintiff or his subtenants is not conducted in a proper and reliable manner, all of which statements are wholly false and without warrant in fact; and partly by threatening, in case the corporation does not so refuse, that they will not longer co-

operate with the defendant corporation in furnishing data for such publication, and that they will diminish the advertising obtainable by such publication, and that they will in other manners injure the business of the defendant corporation; that the defendants Kelley and Sampson will continue in like manner to induce the defendant corporation to boycott the plaintiff unless they are stayed by the hand of this court.

" Eleventh. The plaintiff is informed and believes, and therefore alleges, that the publication and sale of said publication, in substantially the form of the issue of June 15, 1909, and without reference to the business of the plaintiff or his subtenants is calculated to deceive the public, for the profit of the defendants Kelley and Sampson, and is intended so to deceive the public; and that such exclusion of reference to the plaintiff and his subtenants will, in and of itself, work a fraud upon the public to the inconvenience and damage of the public, and to the great damage of the plaintiff, and that this fraud will be practised unless the defendants are stayed by the hand of this court.

" Twelfth. If the defendant corporation is permitted hereafter to issue the said publication in the form intended, it will work an injury to the plaintiff irreparable and not readily computable in money, and the plaintiff has no adequate remedy at law for said injury.

" Wherefore, the plaintiff prays:

" (1) That the defendants Kelley and Sampson may be enjoined from inducing the defendant corporation, the New England Railway Publishing Company, not to make reference to the business of the plaintiff and his subtenants in the said publication by any fraud, misrepresentation, threat, intimidation, or in any other unlawful manner.

" (2) That the defendant corporation, the New England Railway Publishing Company, its officers, agents and servants, may be enjoined from making any further issues of its said publication without (a) containing such reference to the express businesses of the plaintiff and his subtenants as is made to the express businesses of other persons (provided the plaintiff furnishes the appropriate data and does all other acts properly to be required from him in the premises), or (b) by so altering the form of such publication that it will no longer be calculated to create

the impression in the minds of the public that it contains a complete list of the reputable express companies having offices in Boston.

" (3) That an injunction, *pendente lite*, may forthwith issue, restraining the defendants in the manner stated in the first and second prayer.

" (4) That the plaintiff may have damages against the defendants for the unlawful injury worked to his respective businesses.

" (5) That the plaintiff may have such other and further relief as to the court may seem just."

By an amendment, allowed on September 15, 1909, a copy of the " A B C Pathfinder and Dial Express List," dated June 15, 1909, was made a part of the bill.

The defendants demurred to the bill on the grounds that the plaintiff was not entitled to relief in equity, that he had an adequate and complete remedy at law and that the bill was multifarious.

The case came on to be heard upon the demurrers by *Fessenden*, J., who, being of opinion that the questions presented so affected the controversy that the matter ought before further proceedings to be determined by this court, reported the case for such determination. If the demurrers were sustained, the bill was to be dismissed. If the demurrers were overruled, the case was to be remanded to the Superior Court and the defendants were to have leave to file answers.

*E. F. McClennen*, for the defendants.

*E. H. Warren*, for the plaintiff.

KNOWLTON, C. J.   The plaintiff is the proprietor of the Northern Express Company, which carries merchandise between Boston and many cities and towns in Massachusetts, Maine and New Hampshire. He also sublets portions of his office to the proprietors of other express companies doing business in or near Boston. The defendant corporation is the publisher of the "A B C Pathfinder and Dial Express List." The bill contains the following averments: " This publication is the only one of its kind issued or in circulation in Boston. The publication is in a form intended and calculated to create in the minds of the public the belief that it contains the names of all the reputable local ex-

presses doing business in Boston and vicinity.   It has created, and does now create, such belief in the minds of the public. This belief is the main, if not the sole, reason inducing purchases of the publication by the public.   This belief has enabled the defendant corporation to obtain a large circulation among the business houses and general public in Boston and vicinity.   The publication is usually and frequently consulted by persons having occasion to employ a local express.   It has come to be accepted by the general public as the recognized directory of local express companies."   There are other averments showing some of the particulars of the contents of the publication, which tend to support the above general averments, and particularly the averment that it is intended and calculated to create in the minds of the public the belief that it contains the names of all the reputable local expresses doing business in Boston and vicinity.   A copy of the publication is made a part of the bill, and it tends to confirm and strengthen this averment.   It is averred that "the plaintiff and each of his subtenants is conducting his express business in a lawful and proper manner, and to the convenience and satisfaction of his patrons," — in substance, that these express companies are reputable, and that "no good reason exists why the defendant corporation should discriminate against them, or any of them, or should exclude reference to them, or any of them, from its publication."   It is averred that the defendant corporation has omitted any reference in its publication to the business of the plaintiff or of his subtenants, and that it is about to bring out another issue of the same general publication, and has been requested to include the plaintiff's office in the list of express offices, and to make reference to the express business of the plaintiff and his subtenants, and has refused and still refuses so to do.   The plaintiff also alleges that the defendant corporation refuses to assign any reason for its objectionable conduct.

It is alleged that the other two defendants control a majority of the general local express companies whose names appear in the publication, that they have an acquired and dominating influence in this business in Boston, and are seeking to obtain an absolute monopoly of this kind of business, to the exclusion of the plaintiff.   He avers that they have conspired together to prevent the publication by the defendant corporation of any

reference to the business of the plaintiff and his subtenants, and by threats and false statements have induced the defendant corporation to leave the plaintiff and his business without mention in the publication.

The case comes before us on a demurrer, which, for the purposes of the hearing, admits the truth of all the averments of the bill.

The ground on which the plaintiff seeks relief is not that he has a right to compel the defendants or either of them to do anything for his benefit, but that he has a right to have them refrain from intentionally doing anything, without legal justification, to his injury. The defendant corporation professes to give the public a full list of all the reputable express companies doing business in Boston. While it does not say in express words that the list is complete, that is the meaning which the publication is intended to convey and does convey. Its list is false and misleading, to the plaintiff's injury. One purpose of the list is to show the public where they can go to get their express business done. Another purpose is to give the express companies named in the list the benefit of having their names and the nature of their business brought before the public who have such business to be done. The direct effect of the false statement is to point those who want the services of an express company to other companies, and to divert them from the plaintiff. They are told, in substance, that there is no such person as the plaintiff, and no such company as the Northern Express Company, engaged in this kind of business. The averment of the plaintiff that he is greatly injured in this way is no more than a statement of the natural result of publishing a directory of express companies with his name and the name of his company left out of it. An intentional act of this kind, without excuse, is a violation of his legal rights. It is the publication of a falsehood concerning him, the direct and natural effect of which is to injure him in his business. The public is misled by the intentional publication of an incorrect list. But the gist of the plaintiff's action is the wrong done him by intentionally turning away from him those who otherwise would do business with him. He is entitled to a remedy for this wrong.

It is peculiarly a case for equitable relief. The wrong is a

continuing, and in a sense an irreparable one. The extent of the injury cannot be measured accurately in an attempt to assess damages.

The injury is to property, and it is not technically a libel upon the plaintiff. The rule that a court of equity will not enjoin the mere commission of a crime does not apply. The conduct complained of works a continuing and permanent injury to the plaintiff's property. Upon proof of the facts set out in the bill, the plaintiff will be entitled to an injunction to protect him from the wrongful publication.

The defendants Kelley and Sampson are alleged, not only to have participated in the wrong, but to have instigated it. It is said that, for their own interests, and to obtain a monopoly in certain departments of the express business, they made false statements about the plaintiff to the other defendant, and threatened injury to the other defendant's business, in order to induce the wrongful publication. Upon proof of these facts and the other averments of the bill, the plaintiff is entitled to an injunction against these defendants, to prevent them from attempting to procure this wrongful kind of publication in the future. He has a right to have the other defendant relieved from the temptation to continue the wrongful publication, to which their misstatements and threats might subject it.

Their desire to advance their own interests, in competition, is not a justification for attempting to interfere with the plaintiff's business by misstatements, and the making of a false and misleading publication. *Carew* v. *Rutherford,* 106 Mass. 1. *Walker* v. *Cronin,* 107 Mass. 555. *Sherry* v. *Perkins,* 147 Mass. 212. *Vegelahn* v. *Guntner,* 167 Mass. 92. *Plant* v. *Woods,* 176 Mass. 492. *Berry* v. *Donovan,* 188 Mass. 353.

The bill is not multifarious in seeking relief against all of these defendants. In different ways they were all participating in the infliction of an injury on the plaintiff and his subtenants. To a degree, each was responsible for the commission of the wrongful act. Their relations to the matter complained of were such that it was proper to join them, so that the plaintiff might obtain relief at one time against all the persons engaged in the interference with his rights of property, in order to protect him, if possible, from a repetition of the wrong. It is proper, too,

that the defendant corporation should have protection against a continuance of threats and false statements by the other two defendants.

*Demurrers overruled ; defendants to have leave to answer.*