M. STEINERT AND SONS COMPANY *vs.* GEORGE F. TAGEN & others.

Suffolk.   December 2, 1910. — January 4, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Labor Union. Equity Pleading and Practice,* Report. *Equity Jurisdiction,* To enjoin wrongful and malicious act. *Evidence,* Presumptions and burden of proof.

In a suit in equity by an employer of labor against officers and members of a labor union, where a material question was whether a certain strike, begun on a May 2, had ended before the following October 14, the judge who heard the case reported to this court his finding of the following facts: The strike was declared May 2. Eleven men left the plaintiff's employ and a few days thereafter the plaintiff secured men to take their places and thereafter continued with a force which was adequate and as large as he desired. Of the eleven who left the plaintiff's employ, eight at once secured new employment in the same city and three left the Commonwealth. A short time after the strike began an international organization, with which the striking union was affiliated and which at first had aided it, ceased to do so. *Held,* that the strike was over on October 14.

Upon the report under R. L. c. 159, § 29, to this court by a judge of the Superior Court of the facts and questions of law arising in a suit in equity, this court may draw such inferences from the facts found in the report as are reasonably to be made from and are not inconsistent with any of the facts reported.

The members of a teamsters' labor union, more than four months after a justifiable strike against an employer of teamsters in a city has ended, cannot lawfully drive about the streets of the city a wagon bearing initials indicating the name of the union and placards stating "The union teamsters are on strike for hours and wages" at such employer's place of business.

An employer of labor may maintain a suit in equity to enjoin officers and members of a labor union from driving about the streets of a city containing the employer's place of business, more than four months after a strike which had been declared against the employer had ended, wagons bearing initials indicating the name of the union and placards stating, "The union teamsters are on strike for hours and wages" at such employer's place of business, although he is unable to prove the existence of any loss occasioned by such acts, the acts sought to be enjoined being unjustifiable and manifestly intended merely to injure the plaintiff.

BILL IN EQUITY, filed in the Superior Court on October 20, 1910, seeking to enjoin the defendants, officers and members of the "Piano and Furniture Movers and Helpers, No. 343," from certain alleged illegal acts hereinafter more particularly described.

The case was heard in the Superior Court by *Richardson,* J., who reported it to this court for determination. The report contained the following findings:

" The plaintiff is a corporation engaged in the sale and moving of pianos. It has a place of business in Boston on Boylston Street on the corner of Carver Street. The front of the building and salesrooms face on Boylston Street and the side of the building and workshops face on Carver Street. It also has stores in other cities in the Commonwealth.

" All the defendants are members of a certain voluntary association called ' Piano and Furniture Movers and Helpers Union 343 ' which is a labor union and affiliated with the International Brotherhood of Teamsters and the American Federation of Labor. The defendant Tagen is president of said association, the defendant Smith is treasurer and the defendant Bryson is secretary thereof. The defendant Corliss, though formerly vice-president of said association, is not now an officer thereof, but is still a member.

" The plaintiff employed a number of teamsters for the delivery of pianos to purchasers and for moving pianos belonging to its customers from place to place and all of these teamsters were members of said union. In April, 1910, the union to which the defendants belonged endeavored to secure an increase in wages for the teamsters employed by the plaintiff and shorter hours of labor and failing to do so, on May 2, 1910, declared a strike. The teamsters, eleven in number, at once ceased work. The plaintiff within a few days secured men to take their places and has had since then and has now an adequate force and is not seeking any new men. After a short while the International Brotherhood of Teamsters ceased to aid the strikers any further on account of an alleged failure of the union to comply with the regulations (which were not shown to have been broken) of the Brotherhood in calling the strike and the strikers sought other employment. Of the eleven men who struck eight at once secured positions in Boston as piano movers or teamsters and have continued in such employment and the other three have left the State.

" On October 14, 1910, the defendant Tagen, acting in pursuance of a vote of the union, hired a horse and wagon and attached strips of canvas to the rear and sides of the wagon. The canvas strip on each side of the wagon bore the following inscription in conspicuous letters six inches high :

" ' The union teamsters are on strike for
hours and wages at the following places :
Hunter & Ross, Haymarket Place.
M. Steinert & Sons Co., 162 Boylston St.'

On the rear of the wagon was the following inscription :

" ' I. B. of T.
A. F. of L.'

" The defendant Tagen employed the defendant Kelley to
drive this wagon with the above inscriptions through the streets of
Boston every day for one week passing in front of the plaintiff's
place of business and through Carver Street once each day and
twice on one day in sight of the place where the teamsters of
the plaintiff when not in actual service congregated and generally
throughout the city and the defendant Kelley so drove it. No
crowds followed the wagon, or assembled in front of the plain-
tiff's store, and no attempt other than by the use of this wagon was
made by the defendants, or other members of the union or their
sympathizers to interfere with the plaintiff or to intimidate its
employees. The plaintiff offered no evidence that any of its em-
ployees had left its employment or that any person had refrained
from patronizing it on account of the display of these signs."

*P. Nichols*, for the plaintiff.

*F. W. Mansfield*, for the defendants.

SHELDON, J.   The strike of the plaintiff's employees in May
was for the purpose of obtaining higher wages and shorter
periods of labor. It was a justifiable strike. *L. D. Willcutt &
Sons Co.* v. *Driscoll*, 200 Mass. 110, 113, 114, 130. It does not
appear to have been carried on in any respect in an unlawful
manner or by the use of any unfair coercion or wrongful means.
Nor could we say that the particular act charged in the bill to
have been done by the defendants would be in itself an unlawful
means of publishing the fact that a strike was going on. There
was no picketing, no blocking of the streets, no actual interfer-
ence with the plaintiff or with the men whom it employed in
place of the strikers. We see nothing more than an attempt to
inform the public, including probable applicants for work with
the plaintiff, of the fact of the pending strike. Even if this
were before doubtful, we could not now condemn it, in view of

the provisions of St. 1910, c. 445, which imposed upon the plain-tiff while the strike lasted the duty to give this information to any persons whom it solicited to take the place of the strikers. Of course, what we have said would not be applicable to a case presenting different circumstances from those which existed here, such as appeared for example in *Plant* v. *Woods*, 176 Mass. 492; *Vegelahn* v. *Guntner*, 167 Mass. 92; *Sherry* v. *Perkins*, 147 Mass. 212, and similar cases.

But in the case at bar the strike was over. Although this fact was not expressly found in the Superior Court, in our opin-ion it is necessarily to be inferred from the facts which are found, and must be taken to be a fact. *Knowles* v. *Knowles*, 205 Mass. 290, 294. The strike was declared May 2, 1910. The plaintiff within a few days secured men to take the places of the strikers, has had ever since an adequate force, and is not seeking any new men. Of the eleven men who left the plain-tiff's employ, eight soon secured and still have new employment in the same kind of work as before, and three have left this Commonwealth. Moreover a short time after the strike began, the International Brotherhood of Teamsters, the organization with which the defendants' labor union was affiliated, ceased to aid the strikers any further. It is difficult to imagine a case, short of a formal agreement of both parties, in which it could be more manifest that a strike had come to an end.

The defendants' act in driving the wagon through the streets with the placards complained of began on October 14, 1910, long after the end of the strike, and has since been continued. We can see no justification of it. It is a false announcement, not adapted in any way to benefit the defendants or their union, but likely to embarrass the plaintiff whenever it may need to em-ploy additional men. It manifestly was intended merely to injure the plaintiff. This shows that it was done maliciously within the legal meaning of that word. *McGurk* v. *Cronenwett*, 199 Mass. 457, 461, 462. The law will give a remedy for such an act. *Martell* v. *White*, 185 Mass. 255, 257. *Hartnett* v. *Plumbers' Supply Association*, 169 Mass. 229.

The case does not come within the doctrine that equity will not enjoin the publication of a libel. There is here a wrongful act maliciously done, continuing and repeated day by day, which,

although it is not shown to have caused as yet any damage to the plaintiff, is manifestly intended to produce that result, is liable at any time in the future to do so, and may cause real and substantial damage of which it would be certainly difficult and might be impossible to prove either the existence or the *quantum* of loss. It is like a boycott declared and maintained without cause. In such a case equity will give relief. This is the real doctrine of many of our own decisions. *Sherry* v. *Perkins*, 147 Mass. 212. *Vegelahn* v. *Guntner*, 167 Mass. 92. *Plant* v. *Woods*, 176 Mass. 492. *Pickett* v. *Walsh*, 192 Mass. 572. *Beekman* v. *Marsters*, 195 Mass. 205. *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470. The same principle has been maintained in other courts. *Emack* v. *Kane*, 34 Fed. Rep. 46. *Lewin* v. *Welsbach Light Co.* 81 Fed. Rep. 904. *A. B. Farquhar Co.* v. *National Harrow Co.* 102 Fed. Rep. 714. *Dittgen* v. *Racine Paper Goods Co.* 164 Fed. Rep. 85. *National Life Ins. Co.* v. *Myers*, 140 Ill. App. 392. *Gilbert* v. *Mickle*, 4 Sandf. Ch. 357. *Brace* v. *Evans*, 35 Pittsb. L. J. 399. *Murdock* v. *Walker*, 152 Penn. St. 595. *Barr* v. *Essex Trades Council*, 8 Dick. 101. *Beck* v. *Railway Teamsters' Protective Union*, 118 Mich. 497.

A decree must be entered giving to the plaintiff the relief prayed for.

*So ordered.*