CHARLES O. WHITMORE *vs.* INTERNATIONAL FRUIT AND SUGAR COMPANY & others.

Suffolk. December 5, 6, 1912. — May 23, 1913.

Present: HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Equity Jurisdiction,* Suit by bondholders to prevent impairment of security. *Corporation,* Rights of bondholders. *Mortgage,* Of real estate. *Equity Pleading and Practice,* Bill, Demurrer.

The holders of bonds of an insolvent corporation, secured by a mortgage to a trustee for the benefit of the bondholders, may maintain a suit in equity, against the corporation and its officers and controlling stockholders and the trustee under the mortgage, to restrain the defendants from impairing the value of the security of the bonds either by the fraudulent issue of additional bonds or by an improvident and unwarrantable sale of the land covered by the mortgage.

A bill in equity, which alleges fraudulent and improper acts on the part of various defendants injurious to the plaintiff, is not multifarious because the defendants are alleged to have been concerned with the matters of which the plaintiff complains, some in one way and some in another, or because the particular acts alleged to have been done by one defendant are distinct from those alleged to have been done by other defendants, if all of such alleged acts tended to the general result injurious to the plaintiff.

A demurrer to a bill in equity must be overruled if the bill sets forth any ground on which the plaintiff is entitled to equitable relief, although some of the grounds of demurrer are sustainable as to parts of the bill.

HAMMOND, J. The demurrers were overruled by a judge of the Superior Court,* and the case is before us upon a report

---

* *Jenney, J.*

made by him under R. L. c. 159, § 27. If the order overruling the demurrers was erroneous, the bill is to be dismissed with costs, unless further amendment shall be allowed. If the order was right, the defendants are to answer over.

We adopt as a sufficiently full and accurate summary of the bill the one given by the judge of the Superior Court in his "memorandum of decision," which is in the following language:

"The bill as amended, in substance alleges:

"1. The entire property, 'for the most part barren or covered with woods,' of the International Fruit & Sugar Company, hereinafter called the Fruit Company, is included in a mortgage to the International Trust Company, hereinafter called the trustee, and does not exceed in value $50,000. There have been issued bonds secured by said mortgage to the par value of $400,000, of which amount bonds to the par value of $250,000 are still the property of the Fruit Company, but bonds to a par value in excess of $75,000 have been transferred to certain of the defendants as trustees of the Cuban-American Trust, of which amount bonds to a par value in excess of $40,000 are still in the possession of the persons named as trustees, either individually or as such trustees, and 'a large number' of the bonds have been sold by the Fruit Company to *bona fide* purchasers through false and fraudulent misrepresentations, set forth in detail, some of which were clearly statements as to existing facts.

"2. The individual defendants caused the Fruit Company to be organized as a fraudulent scheme for the purpose of transferring to it the property included in the mortgage at a grossly excessive price, and of selling said bonds and the stock of the corporation by means of false and fraudulent representations, all as set forth in paragraphs 3, 4, and 5 of the amended bill. Recitals of subsequent action are made in said paragraphs. It seems that at the most these allegations and the recitals referred to are either preliminary to the main part of the bill or matters of inducement and not sufficient for the granting of relief.

"3. The plaintiffs, relying on said representations and believing them to be true, purchased for a valuable consideration, and still own, certain of the bonds.

"4. The individual defendants controlling the Fruit Company

have caused it to transfer to themselves, individually or as trustees of the Cuban-American Trust, the bonds in excess of the par value of $75,000 as hereinbefore referred to without adequate consideration, and these transfers are alleged to be a fraud on the *bona fide* holders. These allegations are vague. But the individual defendants stand in a confidential or trust relation to the corporation. See paragraph 1 of the bill. These bonds in excess of $40,000 in par value are still in the possession of the defendants who are trustees of the Cuban-American Trust, individually or as such trustees.

"5. The individual defendants, as officers of the Fruit Company, have misappropriated money and property of that company and have fraudulently and for their own profit caused unfair and inequitable contracts to be entered into between it and three of their number as trustees for said Cuban-American Trust for the sale of the bonds of the company, which must be construed as including the bonds of the par value of $250,000 still owned by the Fruit Company, and it is alleged that said unfair and inequitable contracts have been secured by means of false and fraudulent representations. Many of these allegations are also somewhat indefinite.

"6. The company is alleged to be insolvent, and on July 1, 1911, defaulted on the payment of the interest due on some of its bonds, and that default still continues as to some bonds including the bonds owned by the plaintiff Cadwell. The trustee has notice of said default and has been requested by the plaintiffs to commence proceedings for the foreclosure of the mortgage, but refuses so to do. · The provisions of the mortgage as to foreclosure are set forth in paragraphs 11 and 12 of the amended bill.

"7. The individual defendants fraudulently plan to cause the Fruit Company to transfer five thousand acres of its lands, including its only valuable and income-producing property, without fair or adequate consideration, which if done by this insolvent corporation will seriously impair the security of its bonds. The trustee, it is alleged, intends to release this land from the mortgage, although it knows of the default on the interest of the bonds, without payment of the amount required by the mortgage.

"8. The mortgaged property is not sufficient to pay in full the bonds now in the hands of *bona fide* bondholders for value.

"To summarize in part: An insolvent corporation has issued mortgage bonds, a part of which have been sold by means of fraud. It still holds part of the bonds. The mortgaged property is not sufficient to pay the bonds already sold. There has been a default in interest on the [a] part of the bonds, which default still continues. The individual defendants, the officers of said corporation, are improvidently at least endeavoring to sell bonds which will increase the amount of the bonded indebtedness and decrease the security for the bonds already sold. Notwithstanding its insolvency, the corporation, acting through the individual defendants, seeks to sell the most valuable part of its property and to wrongfully take said part out from the security of the mortgage. The trustee declines to proceed for the protection of the bondholders."

The relief prayed for is substantially the foreclosure of the mortgage with appropriate proceedings to prevent the impairment of the value of the security of the bondholders either by fraudulent issue of additional bonds or by an improvident and unwarrantable sale of the land covered by the mortgage. There can be no doubt that at least to prevent such impairment the bill is maintainable whether the principal be due or not, or whether the coupons be paid or unpaid.

The bill is not multifarious. All the defendants were materially concerned, some in one way, some in another, with the matter of which the plaintiff complains, and it matters not that to a certain extent the particular acts of one are distinct from the particular acts of others, all tending to the same general result injurious to the plaintiff. See *Parker* v. *Simpson*, 180 Mass. 334, 341; *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470.

The demurrers therefore could not have been sustained as a whole, and hence were rightly overruled; and that would be so even if they were sustainable as to some of the grounds alleged.

It follows that by the terms of the report the defendants are to "answer over;" and it is

*So ordered.*

*S. S. FitzGerald,* for the plaintiff.

*L. Marks,* (*C. S. Hill* with him,) for the defendant International Fruit and Sugar Company and others.