HOTEL AND RAILROAD NEWS COMPANY *vs.* THERESA CLARK & others.

Suffolk.    October 19, 1922. — December 20, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Unlawful Interference.    Labor Union.    Equity Pleading and Practice,* Bill.

A suit in equity by a corporation, engaged in distributing newspapers to retail dealers in Boston and adjacent cities and towns and in selling newspapers, periodicals, confectionery and cigars at leased stands in elevated railway stations, against the officers and members of a union composed of women who had been or were in the plaintiff's employ, to enjoin the defendants from certain acts of unlawful interference with the plaintiff's business alleged to have been threatened, was referred to a master, who in substance found as follows: By reason of the discharge of some of the plaintiff's women employees and the issuance by it of a certain circular, the defendant union was formed. A series of meetings between the plaintiff's president and committees of the union and others occurred, during which demands were made upon the plaintiff which primarily were that the women discharged should be reinstated, the union recognized and a "closed shop" established, and the plaintiff's president was told that if the demands were not complied with, "the Central Labor Union Committee is waiting for our report, and it will be taken up by the Central Labor Union and this committee" which "work together on the matter." At none of the

conferences was any complaint made concerning wages or the hours and conditions of work. The plaintiff refused the demands and brought the suit. During the progress of the hearings before the master, a circular was prepared, issued and circulated by the defendants' agent, which was inaccurate, misleading and unwarranted in many material particulars and which was intended to disparage the plaintiff by charging it with unjust treatment of its employees and with having acted arbitrarily and without justification in refusing to reinstate discharged employees or to negotiate for their return as members of the union. *Held,* that

(1) The plaintiff's refusal to accede to the demands of the defendants was lawful;

(2) When the suit was filed, the plaintiff was warranted in apprehending a united effort to force it to comply with the demands made by the defendants;

(3) It was not necessary to file a supplemental bill to obtain relief from unlawful acts of the character evidenced by the circular published by the defendants' agent during the master's hearings;

(4) The means employed by the defendants to enforce their demand constituted a wrong intentionally inflicted and warranted relief in equity;

(5) A decree for the plaintiff properly enjoined the defendants from interfering with the plaintiff's delivery of newspapers, from compelling or attempting to compel the plaintiff to enter into an agreement with the defendant union, from compelling or attempting to compel the plaintiff to unionize its place of business and to maintain a "closed shop" with respect to its saleswomen, from interfering with persons who might wish to enter the plaintiff's employ for the purpose of compelling them to join the defendant union or to assist in enforcing the defendants' demands on the plaintiff, and from compelling or attempting to compel the defendant to reinstate or re-employ its former employees;

(6) It not being shown that the defendants had threatened to inaugurate a strike, a clause in the decree enjoining them "From calling, conducting, continuing or in any way engendering or supporting any strike or concerted action in pursuance of any effort to accomplish the objects described in the bill of complaint" should be eliminated;

(7) A clause of the decree enjoining the defendants "From creating, uttering or publishing any statement, letter or other document containing matter injurious to the business of the plaintiff or intended to interfere therewith or calculated to interfere with or intimidate its employees present or prospective or to deter customers present or prospective from patronizing the plaintiff" should be modified to read "from publishing and circulating any statement in whole or in part of the nature and character of the" circular above described "for the purpose of coercing the plaintiff to reinstate its discharged employees and to employ only union labor."

BILL IN EQUITY, filed in the Superior Court on October 21, 1920, originally against Theresa Clark "individually and as president of a voluntary association called the 'News Stand Girls' Union No. 1323, A. F. of L.,' Margaret Stapleton individually and as recording secretary of said association and all the officers and members of said association, they being too

numerous to be individually named as defendants, but being properly and adequately represented by" the defendants Clark and Stapleton; Louis Leventhal and William J. Boyle, likewise individually and as officers of "The Newspaper Wagon Drivers, Chauffeurs and Helpers' Union Local 259, I. B. C. T. C. S. & H.," and the members of that association as represented by them. The prayers of the bill sought, besides an accounting and damages for certain alleged acts of unlawful interference with the plaintiff's business, temporary and permanent injunctions restraining interference "in any way with the business of the plaintiff in pursuance of the objects of" a conspiracy alleged in the bill of complaint and especially from interfering with delivery of newspapers by the plaintiff, from compelling or in any way endeavoring to compel the plaintiff to enter into any agreement with the News Stand Girls' Union as a contracting party, from compelling or in any way endeavoring to compel the plaintiff to unionize or place its business on the "closed shop" basis with respect to its saleswomen, "from calling, conducting, continuing or in any way engendering or supporting any strike or concerted action in pursuance of" a conspiracy alleged in the bill of complaint or for the accomplishment of any of the objects therein described, and from in any way interfering with or intimidating any of the employees of the plaintiff or any persons who might be desirous of entering its employ for the purpose of compelling such persons to join either of said unions or for the purpose of compelling such persons to assist the defendants in accomplishing the objects set out in the bill of complaint.

In the Superior Court, the suit was referred to a master. An agreement was filed on December 30, 1920, "that no strike of the officers or members of the Drivers' Union was or is contemplated by the News Wagon Drivers, Chauffeurs & Helpers' Union, Local 259, and accordingly it is agreed that the bill may be dismissed as to the officers and members of said union, without prejudice and without costs." An interlocutory decree accordingly was entered and the suit proceeded against the remaining defendants only, the officers and members of the News Stand Girls' Union, No. 1323, A. F. of L., who hereafter will be called the defendants.

Material findings by the master are described in the opinion.

The suit was heard by *Sisk*, J., by whose order, the plaintiff's claim for damages being waived, a final decree was entered enjoining the officers and members of the defendant union, their agents, servants and attorneys of them and of each of them "(a) from interfering with delivery of newspapers by the plaintiff to its own places of business or to any persons, partnerships or corporations to whom it may desire to make such deliveries; (b) from compelling or in any way endeavoring to compel the plaintiff to enter into any agreement with said News Stand Girls' Union or the members thereof as contracting parties; (c) from compelling or in any way endeavoring to compel the plaintiff to unionize or place its business on the closed shop basis with respect to its saleswomen; (d) from calling, conducting, continuing or in any way engendering or supporting any strike or concerted action in pursuance of any effort to accomplish the objects described in the bill of complaint; (e) from in any way interfering with or intimidating any of the employees of the plaintiff or any persons who may be desirous of entering its employ for the purpose of compelling such persons to join said union or for the purpose of compelling such persons to assist the defendants in accomplishing the objects set out in the bill of complaint; (f) from in any way compelling or endeavoring to compel the plaintiff to reinstate or re-employ any of its former employees; (g) from creating, uttering or publishing any statement, letter or other document containing matter injurious to the business of the plaintiff or intended to interfere therewith or calculated to interfere with or intimidate its employees present or prospective or to deter customers present or prospective from patronizing the plaintiff." The defendants appealed.

*P. J. Donaghue*, for the defendants.

*W. M. Noble*, for the plaintiff.

BRALEY, J. It is contended by the appellants that, the plaintiff having failed to sustain its material allegations, the decree should be reversed and the bill dismissed. The salient facts are that the plaintiff corporation is engaged in distributing newspapers to retail dealers in Boston and adjacent cities and towns, as well as selling newspapers, periodicals, confectionery and cigars at leased stands in the stations of the Boston Elevated Railway Company. It employed at the news-stands about one hundred

and seventy-five girls, and controlled at least fifty per cent of the sales of newspapers published within the territory described. It began on May 1, 1920, to discharge some of its employees for reasons which were fully stated in a circular, a copy of which was given to each employee, and during the period from May 1 to October 16 one hundred and two girls were dismissed. While these employees were not members of a labor union, the master finds that the issuance of this circular caused the organization of the defendant union, a voluntary organization, the membership of which consisted of women who had been or were in the employment of the plaintiff. A committee representing the union called on the plaintiff's president and notified him of what had been done. An appointment was made for a second meeting, when another committee, of which Margaret Stapleton, one of the defendants, was a member, stated: "We are here to ask you if you are ready to recognize the girls as an organization." The president replied, "These girls will not be reinstated and they were not discharged for joining the union, but were discharged for breaking the rules of the company." The committee retired, but with augmented numbers, including one Anna Weinstock and the defendant Clark, a third interview followed which is fully reported. In substance the president was warned that the girls must be reinstated and the union recognized. If this were not done "the Central Labor Union Committee is waiting for our report, and it will be taken up by the Central Labor Union and this committee" which "work together on the matter." The president was urged to sign an agreement with the union prepared by a "committee of girls in the office of the Woman's Trade Union League" of which Miss Weinstock was president, and who "worked with the girls in the preparation of" the proposed agreement. It was "substantially like an agreement adopted at the meeting of the defendant Union." It required that all employees who "sell goods at stands shall be members in good standing" in the union. But if sufficient help could not be furnished by the union the employer "shall have the legal right to hire such persons as he shall see fit provided they become members of the above named Union within two weeks after date of employment." "No member of the union to be discharged without cause and if so discharged is to be reinstated

with pay for time lost." "Beginners at stands shall be paid for at the rate of $18 a week." "Workers with three months' experience or more shall be paid for at the rate of twenty-one dollars per week."

The demand for reinstatement however had not been withdrawn, and if the plaintiff accepted the proposed agreement, reinstatement would have been effectually accomplished. It obligated the company to employ members of the union among which were a large number of its discharged employees, and those who had not joined the union were of no consequence.

The refusal of the president to enter into the agreement, or to reinstate the girls was lawful. The company could hire employees at will, and the members of the union who were under no contractual obligations to it could seek for work elsewhere. *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269.

The master states that at none of the conferences was any complaint made concerning wages, or the hours and conditions of work. The demands primarily were that the girls discharged should be reinstated, the union recognized, and a closed shop established. It is apparent on the face of the report that, when the bill was filed on October 21, 1920, the plaintiff from the character and purposes of the union and the nature of its demands, with the intimations of further adverse action which had been foreshadowed if the demands were refused, might reasonably anticipate or apprehend a united effort to force compliance, and instead of waiting until coercive measures were put in operation could take steps for their prevention. It is not contended that the defendants can be compelled to take any action for the plaintiff's benefit, but that it can have them enjoined from intentionally and in combination doing anything to its injury unless legally justifiable. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 478. *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554. *Haverhill Strand Theatre, Inc.* v. *Gillen*, 229 Mass. 413.

It is true that the events to which we shall presently refer occurred after the bill was filed. But a supplemental bill was unnecessary. The relief, which is not varied as damages are not claimed, can be administered under the prayer of the original bill. *McMurtrie* v. *Guiler*, 183 Mass. 451, 455.

It appears that between November 4 and November 15, 1920, after hearings before the master were under way, a circular entitled the "Story of the News Stand Girls" was prepared, published and widely circulated. It purported to give a full history of everything which had taken place. It charged unfair and unlawful action by the president and his colleagues in the management of the company, with an urgent appeal to the public "in the principle of fair play" to rally to the defence of the union and to help their campaign by writing immediately to the president urging their re-engagement. The circular was prepared, issued and circulated in its behalf by Anna Weinstock, acting as an agent of the union. It is enough to say of this publication, which the master finds was inaccurate, misleading and unwarranted in many material particulars, that it was intended to disparage the plaintiff by charging the company with unjust treatment of its employees, and with having acted arbitrarily and without justification in refusing to take them back or to negotiate for their return as members of the union. The subsequent letter to the president by the defendants Clark and Stapleton, who respectively were the president and secretary of the union and signed as such, urging a settlement, is of no probative value. It is found that they had no authority to act for it.

We do not deem it useful to make further reference to the subordinate findings reported. The master's conclusion is "that by the means heretofore enumerated the defendants intended to force the plaintiff to reinstate the discharged girls and to establish a closed shop, and accede to the other demands." The "means" employed, to which we have sufficiently referred, were intended to hold the plaintiff up to public condemnation by use of unfair, and to a large degree misleading statements of the origin and scope of the controversy between it and the union, and thereby force the plaintiff to yield, or else take the risk of the impairment or loss of the good will and patronage of customers on which the company's business to an appreciable extent necessarily rested. It was a wrong intentionally inflicted for which a court of equity will grant redress. *Burnham* v. *Dowd*, 217 Mass. 351. *M. Steinert & Sons Co.* v. *Tagen*, 207 Mass. 394. *Fairbanks* v. *McDonald*, 219 Mass. 291, 297, and cases cited.

The decree however is too sweeping. The defendants are

not shown to have threatened to inaugurate a strike, and paragraph "d" is to be eliminated. Paragraph "g" is to be so recast as to read: "From publishing and circulating any statement in whole or in part of the nature and character of the 'story of the news stand girls' as set forth in the record, for the purpose of coercing the plaintiff to reinstate its discharged employees and to employ only union labor." The decree as thus modified is affirmed with costs of the appeal.

*Ordered accordingly.*