LAWRENCE TRUST COMPANY *vs.* SUN-AMERICAN PUBLISHING COMPANY & others.

Essex.   March 6, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To enjoin malicious interference.   *Malicious Interference. Equity Pleading and Practice,* Demurrer.

A bill in equity by a trust company against a corporation, which was the publisher of a newspaper, and against its president and its manager contained allegations in substance that the individual defendants, " with the sole and malicious purpose . . . of each of them " of injuring the plaintiff and of impairing its credit and injuring its business and property, had combined and conspired to induce persons dealing with the plaintiff as customers or depositors to discontinue such relations by the making and circulation of false, malicious, misleading and defamatory statements of and concerning the business and credit of the plaintiff to the effect that its business was conducted by incompetent, untrustworthy, dishonest officials unworthy of confidence and had caused the defendant corporation to publish false, misleading and malicious statements and representations in effect that the business and credit of the plaintiff was failing and depreciating and that the officers and directors of the plaintiff were and had been incompetent, dishonest, corrupt and unworthy of the trust and confidence of the public and of the plaintiff's depositors and customers. Among other prayers of the bill were prayers for an injunction against the continuance of such unlawful interference and for damages. The defendants demurred to the bill as a whole. *Held,* that

(1) The suit, upon the allegations of the bill, was maintainable;

(2) The allegations as to conspiracy, while appropriate, were not necessary;

(3) The demurrer being to the bill as a whole, it was not necessary to consider a contention that certain alleged publications of the defendant corporation, which were annexed to the bill, contained no reference to the plaintiff.

BILL IN EQUITY, filed in the Superior Court on September 27, 1922, against Sun-American Publishing Company, John P. S. Mahoney, its president, and James J. Wrinn, its manager, seeking to enjoin the defendants Mahoney and Wrinn and their several and respective servants, agents, employees and attorneys " from further conspiring or combining together," or with the defendant, the Sun-American Publishing Company, to cause or instigate the publication by it or by any other publishing agency, of any editorial statements, or representations calculated or intended unjustifiably or unwarrantably to discredit or disparage the financial or business credit of the plaintiff or so to disparage the conduct or administration of the plaintiff's corporate affairs, or of any list or lists, purporting to set out and exhibit the names of all reputable, accredited, and lawfully established trust companies doing business in said city of Lawrence, without the name of the plaintiff being included in such list or lists, or of any editorial, statement, representation or recital intended to discredit or impair the financial or business credit of the plaintiff or the conduct or administration of its corporate or business affairs. Further prayers sought damages and attachments by way of trustee process of goods, effects and credits of the defendants alleged to be in the hands and possession of Arlington Trust Company and Merchants Trust Company, of Lawrence, and Old Colony Trust Company of Boston, that attachments of real estate of the defendants Mahoney and Wrinn be made and that they be enjoined from conveying their real estate *pendente lite.*

Material allegations in the stating part of the bill are described in the opinion.

The defendants demurred to the bill on the following grounds:

" 1. The bill discloses no ground for relief in equity;

" 2. The plaintiff, so far as appears, has an adequate remedy at law;

" 3. The only substantial relief sought by the bill is an injunction against the publication of defamatory matter;

" 4. It does not appear that the defendants or any of them are insolvent or unable to pay whatever damages the plaintiff may at any time be entitled to;

" 5. It does not appear that the defendants or any of them have any property which cannot be come at to be attached at law;

" 6. The bill does not seek to reach or apply any specific property of the defendants or any of them;

" 7. The damages which the plaintiff seeks to recover are altogether unliquidated and do not constitute a debt.

" The defendants further demur to the bill in so far as it seeks to restrain the publication of certain lists of banks without including therein the name of the plaintiff."

The demurrer was heard by *Morton*, J., who ordered it overruled, and, being of opinion that such order so affected the merits of the controversy that before further proceedings the matter ought to be determined by this court, he reported the suit for that purpose, " such order to be entered as the law may require."

*R. G. Dodge,* (*W. A. Barrows* with him,) for the defendants.

*H. Parker,* (*E. H. Hewitt* with him,) for the plaintiff.

BRALEY, J.   It was said in *Boston Diatite Co.* v. *Florence Manuf. Co.* 114 Mass. 69, 70, " The jurisdiction of a Court of Chancery does not extend to cases of libel or slander, or of false representations as to the character or quality of the plaintiff's property, or as to his title thereto, which involve no breach of trust or of contract."   And this general rule has been followed in *Whitehead* v. *Kitson,* 119 Mass. 484, *Raymond* v. *Russell,* 143 Mass. 295, *Covell* v. *Chadwick,* 153 Mass. 263, 267, *Finnish Temperance Society Sovittaja* v. *Raivaaja Publishing Co.* 219 Mass. 28.   But the bill in the present case contains no allegations that any of the articles published are libellous in character, for which special damages are claimed.   It rests upon the ground stated in para-

graphs three, five and six, that quite apart from any rights of contract or breach of fiduciary relations, the defendants " with the sole and malicious purpose and intent of each of them of injuring the complainant and of impairing its credit and injuring its business and property, . . . maliciously and unlawfully combined and conspired together, to interfere with and injure the lawful business and credit of the complainant and to induce persons dealing with the complainant, as customers or depositors, to discontinue such relations with complainant, by the making and circulation of divers and many false, malicious, misleading and defamatory statements of and concerning the business and credit of the complainant, and by making and circulating false, malicious and defamatory statements and charges to the effect and of the intent and tenor that the business of the complainant was and is conducted by its officials who were and are incompetent, untrustworthy, dishonest and unworthy of the confidence of the persons who were or might be dealing with the complainant, as customers or depositors, in its banking business, and said respondents have, with their said malicious purpose and intent, and, pursuant to their said combination and conspiracy, so combined together to cause, induce and procure, and have in the prosecution and promotion of said conspiracy and combination caused, induced and procured the respondent, the Sun-American Publishing Company, to publish in the editorial and other columns of the said publication under the name of ' The Sunday Sun ' divers and repeated false, misleading and malicious statements and representations of the tenor and effect that the business and credit of the complainant is failing and depreciating, and that the officers and directors of the complainant corporation are and have been incompetent, dishonest, corrupt and unworthy of the trust and confidence of the public and of the depositors and customers of the complainant. The said respondent John P. S. Mahoney, and said respondent James J. Wrinn, with their intent aforesaid, and pursuant to their said conspiracy and combination and in the prosecution and promotion thereof have instigated, procured, induced and caused the said

respondent Sun-American Publishing Company to publish and circulate in said newspaper called 'The Sunday Sun' divers, many and repeated editorials and statements in language and effect calculated and intended by said respondents John P. S. Mahoney and said James J. Wrinn, by false and misleading statements therein set forth to induce, persuade and entice customers, patrons and depositors of the complainant to discontinue their business with the complainant, and to withdraw their deposits from the complainant. And the complainant sets forth the following copies . . . of certain publications so procured and caused to be published and circulated as aforesaid, with the respective dates of said publications attached to said copies." The defendants by their demurrer admit the truth of the facts alleged. *Lea* v. *Robeson*, 12 Gray, 280. It is manifest that a case is stated of intentional disparagement of the plaintiff's business by false and misleading statements published by the defendant company, for which, if their participation is proved, the individual defendants who control the paper, as well as the corporation, are responsible. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 479. *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 355. The charge of conspiracy does not of course change the nature of the suit, or add anything to its legal effect. The gist of the complaint is the wrong committed and the resulting damage. To charge all the defendants it is necessary to prove a combination or joint action, and the allegation of conspiracy may be appropriately made, but for any other purpose it is immaterial. If the plaintiff cannot prevail against one of the defendants it must fail, even if a conspiracy is charged. *Randall* v. *Hazelton*, 12 Allen, 412, 414. The action is for a wrong instigated for the purpose of inflicting an injury on the plaintiff, not in the sense of personal defamation within the doctrine of *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co. supra*, but for injury to property by unlawful interference with the plaintiff's business. *May* v. *Wood*, 172 Mass. 11. It is true that the element of unfair trade competition does not appear. But

this is not essential.   *Walker* v. *Cronin,* 107 Mass. 555, 566. The defendants are charged with having sought to persuade and induce depositors to boycott the plaintiff because its methods of business and the financial results appearing in its statements and returns, when compared with other trust companies inferentially showed incompetent management. *Hartnett* v. *Plumbers' Supply Association of New England,* 169 Mass. 229, 235.   The bill therefore can be maintained to enjoin the continuance of similar publications, designed to injure the plaintiff's business and for damages already suffered.   *Davis* v. *New England Railway Publishing Co. supra.   M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394, 397, 398, and cases there collected.   *Perry* v. *Pye,* 215 Mass. 403.   *Martin* v. *Murphy,* 216 Mass. 466.   The demurrer being a single demurrer to the whole bill, which is maintainable on the publications wherein the plaintiff is specifically named, or is manifestly referred to, the publications containing no such reference need not be discussed.   *Granara* v. *Italian Catholic Cemetery Association,* 218 Mass. 387, 393.

*Order overruling the demurrer is to stand.*