The Only Independent Motor Coach Lines, Inc., et al.
vs.
Clarence W. Cummings et al.

Eq. No. 9886.

January 13, 1930.

BAKER, J. Heard on prayer for preliminary injunction.

The incorporated complainant operates a bus terminal at No. 28 Fountain Street in the City of Providence and the two other complainants conduct a lunch counter therein. The respondents are engaged in operating another bus terminal at No. 14 on the same street in said city.

The evidence shows that practically all of the customers coming to these two terminals approach from the direction of Eddy Street, and therefore, are compelled to pass the respondents' terminal in order to reach that operated by the complainants. It is not seriously controverted that the respondents, at various times during the past several months, have conducted themselves in a more or less noisy and disorderly manner in and about the terminal operated by them at No. 14 Fountain Street and on occasions have approached the other terminal at No. 28 on said street operated by the complainants. Respondents have gathered about prospective customers and have at times formed a line across the sidewalk in such a way as to make it difficult for passengers to reach the complainants' terminal. They have also, with considerable frequency, in loud tones shouted remarks while upon the sidewalk derogatory to the complainants' place of business and the bus lines operated therefrom. For example, the complainants' terminal has been called "the pigs' trough," and

on several occasions the respondent Clarence W. Cummings has appeared upon the sidewalk attended by a live pig. Various remarks have been made by the respondents relating to the dependability and reliability of the complainants' lines, the regularity of their operation and the character of their drivers. Statements have been made concerning the hitting of trees by the complainants' busses and the lines were referred to as "lines to the hospital." Remarks of this type, although directed to the complainants and the persons working about their terminal, quite obviously were intended for the ears of the general public and more especially for the customers of the various bus lines. There is also evidence that on occasions there was some pushing and actual physical contact between the parties.

It is quite clear that the respondent Clarence W. Cummings is the chief offender, but all of the respondents are more or less involved.

The respondents urge that the complainants do not come into Court asking for relief with clean hands, in that they themselves have engaged in somewhat similar practices.

A careful consideration of the evidence satisfies the Court beyond any question that the trouble and disorderly conduct was started by the respondents. The complainants are not the aggressors but undoubtedly do retaliate to some extent with uncomplimentary remarks when goaded beyond endurance by the respondents. In this they can hardly be blamed and the Court is satisfied that the complainants have not conducted themselves in such a manner as to prevent their bringing this bill.

It is true, as the respondents urge, that a considerable part of the testimony relates to the conduct of the parties during last summer and in the fall, and also that there is no direct evidence that complainants have suffered any serious damage. While this may be so, it is quite clear that the respondents do not intend to materially change their course of conduct and, in fact, propose to conduct themselves in the future substantially as they have in the past if they see fit to do so. The question of damages is, of course, more or less speculative either way.

In cases of this type it is not always easy to apply the law to a given set of facts. It is well settled that equity has no jurisdiction to restrain a mere libel or slander or one which is threatened, even though in some instances the complainant may be injured in his business or as to his property. The remedy is an action at law.

Baltimore Ins. Co. vs. Gleisner et al. (Pa.)

Marlin Fire Arms Co. vs. Shields, 171 N. Y. 384.

However, it has been held "that a Court may grant injunctive relief where the words or writing complained of are not only libelous but are of such a nature as to threaten, intimidate or coerce customers of complainant into discontinuing business relations * * *."

Cases of boycott are frequent illustrations of this type.

Vol. 32 C. J. page 273.

This general principle has been recognized in various cases.

Emack vs. Kane, 34 Fed. 46.

A very good discussion of some of the general principles involved appears in the following cases:

American Malting Co. vs. Keitel, 209 Fed. 351;

Willis vs. O'Connell, 231 Fed. page 1004.

In the latter case the Court says that there are two classes of cases in which relief by injunction has been granted, namely, where unlawful violation was threatened and imminent and where unfair and illegal methods were resorted to by competitors in trade. Some of the cases have taken into consideration the question of unfair competition in its broadest sense, and in one the Court discussed the matter as

if it might be considered a private nuisance.

*Davis* vs. *N. E. Railway Publishing Co.*, 203 Mass. 470;

*Allen Mfg. Co.* vs. *Smith*, 224 Ap. Div. N. Y. 187;

*Gilly* vs. *Hirsh*, 122 La. 966;

See also 29 Harvard Law Review, page 640, Equitable Relief against Defamation; Pound.

There is apparently some indication of a tendency to extend the theory of unfair competition beyond the cases of "simulation" or "passing off."

The respondents call to the Court's attention the case of *Manufacturers Outlet Company* vs. *Longley et al.*, 20 R. I. p. 86. After careful consideration, it does not seem to the Court that this case is entirely decisive of the case at bar, in that the Court in sustaining a demurrer to the bill in equity did so at least partly on the ground that if an injunction were issued it would be nugatory. The Court says: "It is not alleged that there is any danger that they (the slanders) will be repeated. They are acts of the past, and their effect has occurred. If the influence of these acts continues, it can not be prevented by injunction."

While the bill in this case does not directly allege any threats of future action on the part of the respondents, nevertheless, in the opinion of the Court, its general scope clearly sets out a present and continuing situation and one which is likely to occur in the future. After due consideration, the Court has come to the conclusion that the testimony herein reveals a situation more nearly resembling cases of intimidation and coercion than it does ordinary slander causing injury. Unquestionably, the obvious purpose of the shoutings, epithets, crowding and boisterous conduct on the part of the respondents is to deter customers from patronizing the complainants' terminal and bus lines.

The Court is therefore of the opinion that the complainants have presented enough to warrant the Court in granting the prayer for a preliminary injunction to prevent the use of any language and conduct on the part of the respondents which might in any way tend to intimidate or coerce complainants' customers, until this matter can be heard on its merits.

For complainants: J. Addis O'Reilly.

For respondents: Boss, Shepard & McMahon.